JOHN LEDUC vs. COMMONWEALTH.

Suffolk. September 11, 1995. - November 27, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Constitutional Law*, Double jeopardy. *Motor Vehicle*, License to operate, Operating under the influence. *License. Evidence*, Breathalyzer test.

General Laws c. 90, § 24 (1) (*f*) (2), mandating administrative suspension of the license to operate of a driver who fails a breathalyzer test is remedial, that is, its purpose is the protection of public safety rather than punishment; consequently, a criminal prosecution under G. L. c. 90, § 24 (1) (*a*) (1), for operating a motor vehicle while under the influence of intoxicating liquor, brought after such an administrative suspension, does not violate the double jeopardy clause of the United States Constitution or Massachusetts common or statutory law. [435-437]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 9, 1995.

The case was heard by *O'Connor*, J.

*James B. Krasnoo* for the plaintiff.

*S. Jane Haggerty*, Assistant District Attorney, for the Commonwealth.

*Scott Harshbarger*, Attorney General, & *Gail M. McKenna*, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

ABRAMS, J. John Leduc's driver's license was suspended for ninety days because he failed the breathalyzer test required by G. L. c. 90, § 24 (1) (*f*) (2) (1994 ed.).[1] In addition, the

_____

[1]General Laws c. 90, § 24 (1) (*f*) (2) (1994 ed.), provides, in pertinent part: "If a person's blood alcohol percentage is not less than eight one-hundredths . . . [the] police officer shall . . . immediately and on behalf of the registrar [of motor vehicles] take custody of such person's driver's license . . . . The license suspension shall become effective fifteen days after the offender has received the notice of intent to suspend from

Commonwealth charged Leduc with operating a motor vehicle while under the influence of intoxicating liquor (OUI) in violation of G. L. c. 90, § 24 (1) (*a*) (1) (1994 ed.). Leduc moved to dismiss the OUI complaint, asserting that to prosecute him on that complaint would violate the prohibition against multiple punishments contained in the double jeopardy clause of the Fifth Amendment to the United States Constitution, and the common and statutory law of this Commonwealth. The judge denied Leduc's motion to dismiss.[2]

Pursuant to G. L. c. 211, § 3 (1994 ed.), Leduc correctly sought relief from a single justice of this court. See, e.g., *Kater* v. *Commonwealth*, ante 17, 19 (1995); *Cramer* v. *Commonwealth*, 419 Mass. 106, 107 n.1 (1994); *Koonce* v. *Commonwealth*, 412 Mass. 71, 72 (1992). See also S.J.C. Rule 2:21, *post* 1303 (1995) (effective Nov. 15, 1995). The single justice denied relief. Leduc appeals. We affirm the judgment of the single justice.

I. *Facts.* On July 2, 1994, at approximately 1 A.M., Trooper K.E. Reine of the Massachusetts State police observed Leduc's vehicle weaving in marked lanes. Trooper Reine stopped the vehicle and, after detecting the odor of alcohol on Leduc's breath, asked him to perform a variety of field sobriety tests. She concluded that Leduc was under the influence of alcohol, arrested him, and transported him to the State police barracks in Andover, where Leduc took a breathalyzer test and registered blood alcohol levels of 0.14% and 0.12%. His license was seized and suspended pursuant to G. L. c. 90, § 24 (1) (*f*) (2). On July 5, 1994, he was arraigned and charged with OUI. If convicted, Leduc could be punished by fine and imprisonment. See G. L. c. 90, § 24 (1) (*a*) (1).

---

the police officer. The license to operate a motor vehicle shall remain suspended until the disposition of the offense for which the person is being prosecuted, but in no event shall such suspension pursuant to this subparagraph exceed ninety days."

[2]According to the record, Leduc's trial is scheduled for December, 1995.

II. *Double jeopardy. Luk* v. *Commonwealth, ante* 415 (1995), involved an administrative license suspension (ALS) for refusing to submit to the breathalyzer test required by G. L. c. 90, § 24 (1) (*f*) (1) (1994 ed.). The instant case involves an ALS for taking and failing a breathalyzer test under G. L. c. 90, § 24 (1) (*f*) (2). In *Luk* we discussed in detail the multiple punishment component of the double jeopardy clause as developed in *Department of Revenue of Mont.* v. *Kurth Ranch,* 114 S. Ct. 1937 (1994), and *United States* v. *Halper,* 490 U.S. 435 (1989). See *Luk, supra.* Leduc's double jeopardy claim fails because, as in *Luk,* the suspension of his driver's license is not punishment for double jeopardy purposes. We hold that, as in *Luk,* the "character of the actual sanction[ ] imposed . . . by the machinery of the state" is remedial. *Halper, supra* at 447. See *Kurth Ranch, supra* at 1946-1948.

The historical aim of licensure generally is preservation of public health, safety, and welfare by extending the public trust only to those with proven qualifications. See *Levy* v. *Board of Registration & Discipline in Medicine,* 378 Mass. 519, 527-528 (1979). Moreover, statutes making continued licensure dependent on continued eligibility for the public trust are historically nonpunitive. See, e.g., G. L. c. 112, § 87L (1994 ed.) (barber's certificate of registration may be suspended "for failure to comply with sanitary rules or regulations . . . or for having imparted any contagious or infectious disease"); *Feldstein* v. *Board of Registration in Medicine,* 387 Mass. 339, 341-342 (1982) (revocation of license to practice medicine nonpunitive); *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.,* 380 Mass. 919, 928 (1980) (common victualler's license revocable for failure to operate eating establishment in manner consistent with public health and safety).

We acknowledge that the threat of ALS acts as a deterrent. We also acknowledge that ALS constitutes an affirmative disability or restraint, and that probable cause to believe that the licensee was engaged in criminal behavior is a prerequisite to ALS. But we think it significant that these

punitive attributes of § 24 (1) (f) (2) are found in most licensing statutes. See *Kurth Ranch, supra* at 1947, 1948. The licenses of pharmacists, opticians, land surveyors, television technicians, electricians, cosmetologists, barbers, and embalmers (among others) can be suspended for violation of the laws of the Commonwealth relating to their occupations. See G. L. c. 13, §§ 9, 22, 29, 32, 39, 42, 45, 48, 61 (1994 ed.); G. L. c. 112, § 61 (1994 ed.). Suspension in those cases is similarly an affirmative disability or restraint, as well as a deterrent to and consequence of criminal behavior. But such license suspensions serve not to punish but to "protect the public health, welfare, and safety" by cancelling the authority of an individual to engage in a specified activity. *Levy, supra* at 527. ALS under § 24 (1) (f) (2) is similarly nonpunitive.[3] See *Luk, supra* at 426-427.

Our conclusion is supported by consideration of the statute's nonpunitive purpose: prompt removal of drunk drivers from the highways. "A person charged with drunken driving who turns up with a substantiated blood alcohol content of .10 percent or more must be thought of as a menace to public safety, and it makes sense to relieve him of his license for a period of time by swift administrative action." *Commonwealth* v. *Callen,* 26 Mass. App. Ct. 920, 922 (1988) (rescript). We do not think a suspension until trial (or for a period not to exceed ninety days) is excessive in relation to this remedial purpose. See note 1, *supra.*

Furthermore, we believe that § 24 (1) (f) (2) is not a retributive statute because it is aimed at public safety rather than "punishment for the sake of justice." J. Hospers, Punishment, Protection, and Retaliation, Justice and Punishment 21, 22 (J.B. Cederblom & W.L. Blizek, eds. 1977).

Drawing the line between punitive and nonpunitive civil sanctions "inevitably involves an element of rough justice." *Halper, supra* at 449. The court's judgment can amount to

---

[3]"[F]or the defendant," of course, "even remedial sanctions carry the sting of punishment." *United States* v. *Halper,* 490 U.S. 435, 447 n.7 (1989). But whether a sanction constitutes punishment for double jeopardy purposes is not determined from the defendant's perspective. *Id.*

no more than an approximation which protects the defendant from a civil sanction clearly disproportionate to its remedial ends. See *Kurth Ranch, supra* at 1946; *Halper, supra* at 450. The judgment of the single justice is affirmed.

*So ordered.*