PAUL W. POWERS *vs.* COMMONWEALTH.

Norfolk. November 3, 1997. - January 28, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Constitutional Law,* Double jeopardy. *Statute,* Construction. *Motor Vehicle,* License to operate.

This court concluded that the indefinite license revocation authorized by G. L. c. 90, § 22 (*a*), was intended by the Legislature to preserve public safety rather than to punish violators, and as a consequence the Registrar of Motor Vehicles may act pursuant to that statute and the Commonwealth may later bring criminal charges under G. L. c. 90, § 24L, both proceedings arising out of the "same offense," without violating the double jeopardy clauses of the United States Constitution or Massachusetts common, statutory, or constitutional law. [537-540]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 5, 1996.

The case was heard by *O'Connor,* J.

*Paul E. Troy* for Paul W. Powers.

*Robert C. Cosgrove,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. This appeal arises out of indictments charging Paul W. Powers (defendant) with multiple violations of G. L. c. 90, §§ 24 and 24L, based on his involvement in a serious motor vehicle accident. The defendant appeals from a ruling by a single justice of this court denying relief from a trial judge's denial of his motion to dismiss and denying leave to appeal from the judge's denial of his motion to suppress. The defendant did not comply with the requirements of S.J.C. Rule 2:21, 421 Mass. 1303 (1995), but instead proceeded in the regular appellate course, even though the denial of the defendant's motions to dismiss is an interlocutory matter and at first glance falls within the rubric of S.J.C. Rule 2:21. However, because the defendant's motion to dismiss is based on a double jeopardy claim, successful appellate review after conviction would not provide adequate relief. The defendant may pursue his appeal

based on the double jeopardy issue pursuant to the regular appellate process. See *McGuinness* v. *Commonwealth*, 423 Mass. 1003 (1996); *Costarelli* v. *Commonwealth*, 374 Mass. 677, 680 (1978). We therefore consider his double jeopardy claim.[1]

1. *Facts.* On July 21, 1995, at approximately 5:06 P.M., the defendant's truck veered into the opposite lane of traffic, struck a motorcycle carrying a driver and a passenger, and then hit another vehicle. As a result, the defendant and three other individuals sustained serious bodily injuries. The defendant was taken to a hospital immediately after the accident.

At the accident scene the police saw an empty beer can on the road next to the defendant's driver side door and several additional beer cans in his truck.[2] The police report indicated "[c]onsumption of alcohol beverages by [the defendant was] a major contributing factor" of the accident. The police questioned the defendant at the hospital at 6:30 P.M. on July 21, 1995. They did not attempt to obtain a blood sample, but the hospital personnel had drawn one at 6:10 P.M. for routine purposes.

Two days later, the police interviewed the defendant again after he had been released from the hospital. The defendant told them that, during the afternoon hours before the accident, he had been at a cookout where he had consumed beer. On July 26, 1995, the Registrar of Motor Vehicles (registrar) notified the defendant that his driver's license was indefinitely revoked

[1]The defendant also sought relief from the single justice from the judge's denial of his motion to suppress evidence of a blood test, taken when the defendant was in the hospital, showing that he had a blood alcohol content of approximately .14. We do not exercise our supervisory powers under G. L. c. 211, § 3, unless there are exceptional circumstances or "where necessary to protect substantive rights *in the absence of an alternative, effective remedy*" (emphasis supplied). *Montes* v. *Commonwealth*, 423 Mass. 1014, 1014 (1996), quoting *Soja* v. *T.P. Sampson Co.*, 373 Mass. 630, 631 (1977). See *Ventresco* v. *Commonwealth*, 409 Mass. 82, 83 (1991) (court's superintendence powers may not be used to circumvent prohibition against interlocutory appeals). No interlocutory appeal may be taken from such a decision of the single justice. See *Commonwealth* v. *Boncore*, 412 Mass. 1013, 1014 (1992) (no appeal from denial by single justice of leave to appeal). Accord *Commonwealth* v. *Rivera*, 424 Mass. 1007 (1997); *Commonwealth* v. *Dunigan*, 384 Mass. 1, 5 (1981).

[2]Although the police did not detect the odor of alcohol from the defendant when they first arrived, they noted the likely reason was that blood on the defendant's face and mouth may have masked the smell. In addition, the defendant told officers that he had consumed "a couple of beers" in the hours before the accident. Investigators ruled out the possibility that a mechanical failure in the defendant's car caused the accident.

pursuant to G. L. c. 90, § 22 (*a*), because the accident rendered him an immediate threat to public safety. On October 18, 1995, a grand jury returned three indictments charging violation of G. L. c. 90, § 24L (1) (operating recklessly causing serious bodily injury while driving under the influence of intoxicating liquor); three indictments charging violation of G. L. c. 90, § 24L (2) (operation while under the influence of intoxicating liquor causing serious bodily injury); one indictment charging violation of G. L. c. 90, § 24 (1) (operating a motor vehicle while under the influence of intoxicating liquor); one indictment charging violation of G. L. c. 90, § 24 (2) (*a*) (driving negligently so as to endanger); and one indictment charging violation of G. L. c. 85, § 2 (failing to drive safely within lane of traffic).[3]

The defendant argues that the prosecution of the offenses under G. L. c. 90, §§ 24L and 24, would subject him to a second punishment for the same crime in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution and the common law of the Commonwealth.[4]

General Laws c. 90, § 22 (*a*), allows the registrar to suspend an operator's license without a hearing "whenever the holder thereof has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to the public safety." That section further provides:

> "Upon such suspension or revocation, the registrar shall forthwith send written notice thereof to the licensee or registrant . . . specify[ing] the time and place of the violation. The registrar may order the license of such operator or the registration certificate and number plates to be delivered to him . . . and neither . . . shall be reissued unless, upon examination or investigation, or after a hearing, the registrar determines that the operator shall again

[3]Prior to the indictments on August 2, 1995, a criminal complaint against the defendant had been filed in the Wrentham Division of the District Court Department.

[4]The double jeopardy clause of the Fifth Amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The Fifth Amendment is applicable to the States through the Fourteenth Amendment to the United States Constitution. *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969).

be permitted to operate. Said operator shall be entitled to a hearing within thirty days of the suspension or revocation . . . ."

The defendant chose not to exercise his right to a hearing.

2. *Double jeopardy.* The double jeopardy clause of the Fifth Amendment prevents multiple punishments for the same offense.[5] *Luk* v. *Commonwealth*, 421 Mass. 415, 419 (1995), citing *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). In order to fall within the multiple punishment ban the defendant must demonstrate that (1) his license suspension imposed pursuant to G. L. c. 90, § 22 (*a*), was "punishment"; (2) the indefinite suspension resulted from the "same offense" for which he is subject to criminal prosecution; and (3) the administrative suspension and the criminal case are "separate proceedings." *Luk* v. *Commonwealth*, *supra*, citing *Department of Revenue of Mont.* v. *Kurth Ranch*, 511 U.S. 767 (1994).

The defendant and the Commonwealth agree for double jeopardy purposes that the pending criminal charges constitute a "separate proceeding" from the indefinite license revocation ordered pursuant to G. L. c. 90, § 22 (*a*), and that both proceedings arise out of the "same offense."[6] Thus, our analysis centers on whether the indefinite license revocation under G. L. c. 90, § 22 (*a*), constitutes a "punishment" under double jeopardy jurisprudence.

Since our decisions in *Luk* v. *Commonwealth, supra,* and *Leduc* v. *Commonwealth*, 421 Mass. 433 (1995), cert. denied, 519 U.S. 827 (1996), the Supreme Court of the United States has clarified the proper analysis for

---

[5]Although not expressly included in the Massachusetts Declaration of Rights, this Commonwealth has long recognized a State common-law and statutory prohibition against double jeopardy. See *Thames* v. *Commonwealth*, 365 Mass. 477, 479 (1974); G. L. c. 263, § 7. "The Commonwealth's Constitution has no explicit double jeopardy provision. Certain double jeopardy concepts are no doubt embraced within the Massachusetts Constitution's due process of law provisions, but those provisions do not, at least in this case, provide protection greater than the explicit protections of the Federal double jeopardy clause." *Commonwealth* v. *Forte*, 423 Mass. 672, 674 (1996).

[6]The Commonwealth concedes this point for the purposes of double jeopardy analysis; however, it points out that the registrar's notice of revocation listed seven other (nonalcohol related) surchargeable accidents in addition to the July 21, 1995, accident. Whether the registrar considered these other offenses when deciding to revoke the defendant's license remains a question in light of the fact that the defendant did not exercise his right to a hearing.

determining whether civil sanctions constitute punishment. *Hudson* v. *United States*, 118 S. Ct. 488 (1997),[7] dictates that a determination "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Id.* at 493.[8] Accordingly, we must first ask whether the Legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Id.*, quoting *United States* v. *Ward*, 448 U.S. 242, 248 (1980). An examination of the statute demonstrates that the Legislature intended G. L. c. 90, § 22 (*a*), for the purposes of public safety rather than punishment.

General Laws c. 90, § 22 (*a*), is one of several motor vehicle laws aimed at preserving the public safety. See *Leduc* v. *Commonwealth*, *supra* at 436; *Luk* v. *Commonwealth*, *supra* at 423; *Commonwealth* v. *Dowler*, 414 Mass. 212, 215 n.6 (1993).

In *Luk* v. *Commonwealth*, *supra* at 426-427, we noted that the purpose of a driver's license revocation is "to protect the public from future harm by depriving the unsafe or irresponsible driver of his or her authority to continue to operate a motor vehicle." Because its main purpose is public safety rather than punishment, revocation of a driver's license has been consistently characterized as nonpunitive and therefore civil. *Id.* See *Leduc* v. *Commonwealth*, *supra*.

*Hudson* v. *United States*, *supra* at 493, quoting *United States* v. *Ward*, *supra* at 248-249, then requires us to determine whether

[7]The Supreme Court's prior opinions engendered some uncertainty regarding the precise analysis for examining civil penalties in connection with double jeopardy. See *United States* v. *Ursery*, 518 U.S. 267, 288-289 (1996) (applying two-part analytical framework); *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963) (introducing seven factor analysis). In *Hudson* v. *United States*, 118 S. Ct. 488, 491 (1997), the Court stated the reasons for reaching its holding therein were "in large part [to] disavow the method of analysis used in *United States* v. *Halper*, [490 U.S. 435, 448] (1989), and [to] reaffirm the previously established rule exemplified in *United States* v. *Ward*, [448 U.S. 242, 248-249] (1980)."

[8]In *Hudson* v. *United States*, *supra* at 492, the bank officers (defendants) were indicted on criminal charges relating to conduct allegedly in violation of Federal banking statutes. Based on the same conduct, the office of the comptroller of the currency (OCC), a government agency, had previously imposed monetary sanctions and occupational debarment. *Id.* The defendants challenged the indictment on double jeopardy grounds. *Id.* at 493. The Supreme Court held that the sanctions imposed by the OCC were not "criminal" for the purposes of double jeopardy; therefore, there was no bar to the government proceeding on the indictment. *Id.*

the statutory scheme was "so punitive either in purpose or effect" so as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Id.*, quoting *Rex Trailer Co.* v. *United States*, 350 U.S. 148, 154 (1956). The Court stated that "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. *Id.*[9]

We have determined that the license suspension under G. L. c. 90, § 24 (1) (*f*) (1), was "not overwhelmingly disproportionate to its remedial purposes or the harm caused society by drunk drivers." *Luk* v. *Commonwealth, supra* at 425. Similarly, we have affirmed that a driver's license may be revoked when the registrar believes that failure to revoke an operator's license will compromise public safety. *Id.* at 428.

The defendant offers nothing to demonstrate that the statute is clearly punitive, much less "the clearest proof" that would lead us to conclude that a license revocation is "so punitive in form and effect as to render [it] criminal despite [the Legislature's] intent to the contrary." *Hudson* v. *United States, supra* at 495, quoting *United States* v. *Ursery*, 518 U.S. 267, 290 (1996). The "revocation of a privilege voluntarily granted," such as an operator's license, "is characteristically free from the punitive criminal element." *Id.* See *Luk* v. *Commonwealth, supra* at 423, citing *Helvering* v. *Mitchell*, 303 U.S. 391, 399 (1938).[10]

In spite of the foregoing the defendant argues that, because the revocation of his license was for an indefinite period, it constitutes punishment because the suspension has the potential of lasting longer than any other suspension under the statutory

---

[9]The Court stated that the factors listed in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963), would serve as "useful guideposts." *Hudson* v. *United States, supra* at 493. The seven factors provide whether (1) the sanction involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of scienter; (4) its operation will promote the traditional aims of punishment-retribution and deterrence; (5) the behavior to which it applies is already a crime; (6) an alternative purpose to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. *Kennedy* v. *Mendoza–Martinez, supra.* The Court noted that the *Kennedy* factors "must be considered in relation to the statute on its face." *Hudson* v. *United States, supra*, quoting *Kennedy* v. *Mendoza-Martinez, supra* at 169.

[10]We note that the Supreme Court has made it clear that a civil sanction does not have to be "solely" remedial (entirely nondeterrent) to fall beyond the reach of double jeopardy principles. *Hudson* v. *United States, supra* at 498.

scheme. He points out that the maximum suspension period would be only two years if he were convicted of the crimes charged under G. L. c. 90, § 24L, whereas the revocation pursuant to G. L. c. 90, § 22 (*a*), could last indefinitely.[11]

A revocation under G. L. c. 90, § 22 (*a*), provides the defendant with a right to an administrative hearing within thirty days. The defendant chose not to avail himself of this remedy. Defense counsel argues that the defendant's attendance at this hearing would have proved "futile." That is not necessarily the case. The defendant there could have requested that any administrative suspension be coterminous with any legally imposed suspension.[12]

Neither do we read the statute as providing the defendant with the opportunity to request a hearing only within thirty days of the initial notification of his suspension. The registrar has discretion to grant the defendant a hearing on his license suspension at any time. Because administrative license suspension and revocation sanctions under G. L. c. 90 are nonpunitive, the registrar may revoke a license pursuant to G. L. c. 90, § 22 (*a*), indefinitely and the Commonwealth may later bring criminal charges under G. L. c. 90, §§ 24L and 24 (1), without violating the double jeopardy clause of the United States Constitution or Massachusetts common, statutory, or constitutional law. See *Department of Revenue of Mont.* v. *Kurth Ranch, supra*; *Leduc* v. *Commonwealth, supra* at 435-436; *Luk* v. *Commonwealth, supra* at 430.[13]

*Order of the single justice affirmed.*

---

[11]We reject the defendant's argument that, because there was no mechanism to credit the time imposed from the criminal charges against the administrative suspension, the sanction was punitive. Regardless how the defendant frames his argument, an administrative license revocation under G. L. c. 90, § 22 (*a*), is a nonpunitive sanction designed to promote public safety.

[12]The defendant did not raise below a claim that the hearing would have violated his constitutional privileges against self-incrimination. We do not address this issue because it is raised for the first time on appeal. *Commonwealth* v. *Garcia*, 409 Mass. 675, 678 (1991), and cases cited.

[13]As in *Luk* v. *Commonwealth*, 421 Mass. 415, 416 n.3 (1995), we decline to interpret Massachusetts double jeopardy principles to afford the defendant broader protections than Federal principles of double jeopardy.