COMMONWEALTH VS. STONE S., a juvenile.

No. 97-P-390.

Plymouth. February 6, 1998. - July 30, 1998.

Present: GREENBERG, LENK, & BECK, JJ.

*Juvenile Court,* Delinquent child. *Delinquent Child. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy. *School and School Committee,* Enforcement of discipline.

A juvenile's permanent expulsion from school under G. L. c. 71, § 37H(*b*), for assault on a teacher in a classroom, was an appropriate disciplinary sanction rationally related to the remedial goal of providing a safe school environment for all students and, as such, did not implicate double jeopardy principles so as to bar a subsequent prosecution of the juvenile for assault and battery by means of a dangerous weapon and assault on a public employee. [261-264]

COMPLAINT received and sworn to in the Plymouth Division of the Juvenile Court Department on November 6, 1996.

The case was heard by *Mark E. Lawton,* J., on a motion to dismiss.

*Gail M. McKenna,* Assistant District Attorney, for the Commonwealth.

*Lee Garrison* for the juvenile.

GREENBERG, J. Toward the end of the seventh period, a substitute mathematics teacher at Marshfield High School thought several students were about to bolt from the room before the dismissal bell rang. She positioned herself in front of the classroom door to prevent any disruption. The juvenile sat close to the door. An argument about her being in his way burst into violence. The bell rang and the juvenile jumped from his seat, pulled the door open, and slammed it hard against the teacher. She grabbed his arm to stave off falling to the floor. Still, he continued to push the door against her until he made his escape into the hallway. Moments later he returned to protest that she had scratched his arm.

After the matter was reported to the principal, a decision was made on November 7, 1995, to expel the juvenile. Conformably with G. L. c. 71, § 37H(*d*), the superintendent of schools conducted a hearing and upheld the principal's decision to permanently expel the juvenile. His parents were offered assistance in developing a home education program. The content of the hearing is not in the record, but the upshot of it was that the superintendent found the juvenile at fault for causing injuries to the teacher.

That, however, is not the end of the story. On November 16, 1995, complaints issued from the Juvenile Court charging the juvenile with assault and battery by means of a dangerous weapon, to wit: a door (G. L. c. 265, § 15A), and assault and battery on a teacher engaged in the performance of her duty (G. L. c. 265, § 13D). The juvenile moved to dismiss the complaints on double jeopardy grounds.

After a nonevidentiary hearing during which the parties advanced various legal arguments predicated upon the events outlined above, a Juvenile Court judge dismissed the complaints on double jeopardy grounds. The Commonwealth appeals. We reverse.

The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb." This provision is enforceable against the individual States through the Fourteenth Amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794 (1969). Although the Massachusetts Declaration of Rights contains no explicit reference to double jeopardy protection, the common law of Massachusetts has incorporated such a provision in our law. *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 271 (1982). See G. L. c. 263, § 7 (jeopardy bar after acquittal).

There is no question that juvenile court adjudication proceedings brought against a minor based on conduct that would be criminal if committed by an adult are subject to the limits placed on the power of the State by the concept of double jeopardy. See *Stokes* v. *Commonwealth*, 368 Mass. 754 (1975); *Breed* v. *Jones*, 421 U.S. 519 (1975); *Illinois* v. *Vitale*, 447 U.S. 410, 415 (1980).

Jeopardy, however, does not ordinarily apply to civil trials or administrative proceedings. *United States* v. *Ward*, 448 U.S. 242 (1980). *Custody of a Minor*, 375 Mass. 733, 745-746 (1978). The purpose of the proceeding must be punishment in order to

fall under the scope of double jeopardy. *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144 (1963). *Sullivan* v. *Commonwealth*, 383 Mass. 410, 412 (1981). However, in some cases this distinction becomes blurred where the State imposes a civil penalty that is so disproportionate to the actual offense or to the damage caused by the defendant, it may constitute criminal punishment. *Kvitka* v. *Board of Registration in Med.*, 407 Mass. 140, 144-146, cert. denied, 498 U.S. 823 (1990) (revocation of license to practice medicine upheld, but fine imposed after criminal conviction vacated).

The juvenile argues that permanent expulsion from school is punishment not related to any remedial purpose, and as such, for double jeopardy purposes, bars any prosecution for the same offense in the Juvenile Court. For this argument the juvenile relies upon *United States* v. *Halper*, 490 U.S. 435, 440 (1989), and *Leduc* v. *Commonwealth*, 421 Mass. 433, 435-437 (1995). Both of these decisions involve disciplinary sanctions in different contexts which, in each case, did not implicate double jeopardy principles.[1]

In *Halper*, the United States Supreme Court held that in "rare" instances a civil sanction may qualify as punishment for double jeopardy purposes if the sanction may not fairly be characterized as remedial and is imposed for deterrence or retribution. 490 U.S. at 448-449. Halper had falsified sixty-five claims for reimbursement to Blue Cross and Blue Shield of Greater New York. After conviction of criminal charges related to that conduct, the Federal government brought a civil action against him under the False Claims Act, 31 U.S.C. §§ 3729-3731 (1982 & Supp. II). A Federal District Court judge granted summary judgment for the government on the issue of liability. However, the United States Supreme Court concluded that the $130,000 penalty assessed against Halper was barred by the double jeopardy clause. As to the nature of the inquiry, the court held that the process of affixing a sanction takes on "the quality of punishment" when the amount of the penalty "bears

---

[1]The Supreme Judicial Court has declined to extend double jeopardy principles to a variety of other contexts. *Hill, petitioner*, 422 Mass. 147 (1996) (proceedings against sexually dangerous individuals). *Opinion of the Justices*, 423 Mass. 1201 (1996) (creation of a sex offender registry). *Albano* v. *Commonwealth*, 423 Mass. 1005 (1996) (forfeiture of an automobile involved in narcotics trade). Contrast *Kvitka* v. *Board of Registration in Med.*, 407 Mass. at 145-146 (license suspension upheld, but fine imposed after criminal conviction solely for punitive purposes vacated).

no rational relation to the goal of compensating the Government for its loss. . . ." *Id.* at 449.

The Supreme Judicial Court in *Leduc* v. *Commonwealth*, 421 Mass. at 435-436, applied the *Halper* analysis in the context of driver's license suspension, see G. L. c. 90, § 24(1)(*f*), holding that administrative suspension of the license of a driver who refuses to take a breathalyzer test is remedial. Its purpose is the protection of public safety rather than punishment. The court held that a subsequent criminal prosecution for operating a motor vehicle while under the influence of intoxicating liquor did not violate the double jeopardy clause.

In *Commonwealth* v. *Forte*, 423 Mass. 672 (1996), a case not available to the judge at the time he dismissed the complaint, the Supreme Judicial Court held that the imposition of prison discipline, although having a punitive aspect, does not preclude any criminal punishment for the same inmate misconduct and serves "the deterrent purpose of demonstrating to all other inmates that good behavior is expected of them and that, if they do not conform to prison rules, there will be adverse consequences." *Id.* at 676-677.

More recently, in *Hudson* v. *United States*, 522 U.S. 93, 96 (1997), the United States Supreme Court disavowed the method of analysis used in *Halper*, and reaffirmed the previously established rule found in *United States* v. *Ward*, 448 U.S. 242, 248-249 (1980). See *Powers* v. *Commonwealth*, 426 Mass. 534, 537-539 (1998). Under *United States* v. *Ward*, the question of whether a particular punishment is criminal or civil for double jeopardy purposes requires an examination of the statute in question. In ascertaining whether the double jeopardy clause bars the proceedings here, we must ask whether expulsion under G. L. c. 71, § 37H(*b*), was intended by the Legislature for the purpose of maintaining discipline in school rather than punishment. To ask the question is to answer it.

The juvenile argues that his permanent expulsion is solely punishment because the principal had the option of suspending him for a set period of time rather than expelling him permanently from school. See G. L. c. 71, § 37H(*c*). Such strong medicine, he argues, should not be prescribed for a mild case of misconduct. By way of contrast, the juvenile notes that his is not a case in which a student carried a gun, knife, or other dangerous weapon onto school property to use against another student or school official. To the extent that this distinc-

tion has any merit, we believe that it is of no legal significance in the context of the school disciplinary proceedings at issue here. Expulsion of students who assault school personnel, with or without armament, sends an important message to other students that such intolerable behavior will result in serious consequences. See *Doe* v. *Superintendent of Schs. of Worcester*, 421 Mass. 117, 132-133 (1995). It is an ancient principle that schools have an obligation to protect against the contaminating influence of student misconduct which sometimes involves "vicious propensities and habits." *Sherman* v. *Charlestown*, 8 Cush. 160, 167 (1851). The wrongs to which expulsion in this case extend go beyond instilling "the highest toned morality." *Id.* at 166. No less than the welfare and safety of those entrusted to teach in public schools is at stake. The crucial issue is whether the sanction against the disruptive student serves the remedial goals involving all students, not just the juvenile. Although the juvenile may have experienced his expulsion purely as punishment, we do not think his subjective reaction dispositive. Double jeopardy is not determined from the defendant's perspective; instead, we examine whether the statutory scheme was "so punitive either in purpose or effect as to" change what was intended as a remedial measure into a criminal penalty. *United States* v. *Ward*, 448 U.S. at 248-249.

We recognize that the sanction of expulsion imposed on the juvenile may be viewed by the student body as punishment, but the Legislature has conferred upon school officials "[t]he duty to provide a safe and secure environment in which all children can learn." *Doe* v. *Superintendent of Schs. of Worcester*, 421 Mass. at 131. Of course, the juvenile's expulsion serves as an example to his peers. A disciplinary sanction is remedial and does not involve double jeopardy if it is "rationally related to the remedial goal." *State* v. *McKenzie*, 542 N.W.2d 616, 620 (Minn. 1996), quoting from *United States* v. *Newby*, 11 F.3d 1143, 1145 (3d Cir. 1993), cert. denied sub nom. *Barber v. United States*, 511 U.S. 1087, and cert. denied, 513 U.S. 834 (1994).

Of the various options available to school officials, the most extreme sanction is permanent expulsion. But it also serves a deterrent purpose. The *Doe* court held that a public school principal's decision to expel a student who violated the school's weapons policy without providing the student an alternative education program did not violate the student's substantive due

process rights under the State Constitution. Here, the juvenile has been offered an alternative educational program by the school authorities. Expulsion, in these circumstances, is not overwhelmingly disproportionate to the juvenile's conduct — assaulting a teacher in the classroom — so as to constitute the exceptional case in which a civil sanction is considered "punishment" for purposes of double jeopardy.

We also reject the juvenile's other argument that juvenile delinquency proceedings constitute a second punishment, thus violating double jeopardy principles. In *Breed* v. *Jones*, 421 U.S. at 521, the United States Supreme Court decided that the double jeopardy clause precludes trial of a juvenile in the adult court for the same offense as that for which he had been tried in the juvenile court. The fatal double jeopardy problem in *Breed*, however, was that he was subjected to two criminal trials, not two punishments.

The order allowing the motion to dismiss is reversed, and the case is remanded to the Juvenile Court for further proceedings consistent with this opinion.

*So ordered.*