Sikora, Mitchell J., J.
RULING
The court has considered the plaintiffs complaint and memorandum of law and the defendant Registry’s opposition. The essential facts appear to be undisputed. For the following reasons the court DENIES prayers A and B for preliminary injunctive relief.
REASONING
The plaintiff requests a preliminary injunction restraining the Registry of Motor Vehicles (“RMV”) from enforcing certain provisions of G.L.c. 90, §24 1/2 (a provision of a statute commonly referred to as “Melanie’s Law”). Specifically, the plaintiff Errol Apostolopoulos requests that this court issue a preliminary injunction ordering the RMV to renew his driver’s license without first requiring that he install a “certified ignition interlock device” (“ignition interlock device” or “IID”) on any car which he owns, leases, or operates. Under Melanie’s Law, which look effect on January 1, 2006, any person with two or more convictions for operating a motor vehicle under the influence of alcohol may not be issued a new license or have his license renewed unless such an ignition interlock device has been installed on each motor vehicle owned, leased, or operated. In support of his request, Apostolopoulos argues that §24 1/2 violates the constitutional prohibitions against ex post facto laws and double jeopardy. He further contends that the statute violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution.
Background
The plaintiff Errol Apostolopoulos had previously been convicted for operating a motor vehicle under the influence of alcohol in the state of North Carolina in 1991 and again in 1993. (Compl. at pars. 6-8.) He was incarcerated for ten days and his license was suspended for two years as a result of the 1993 offense. (Id. at par. 8.) In 1995, upon completion of the suspension period, Apostolopoulos applied for, and was granted, a Massachusetts driver’s license. (Id. at par. 9.) Apostolopoulos successfully renewed his license in May 2000. (Id. at par. 10.) In May 2005, the RMV temporarily suspended his driver’s license by reason of administrative issues relating to the North Carolina convictions. (Compl. at par. 11.) Once these issues were resolved, the RMV sent notice to Apostolopoulos that he could apply for reinstatement of his license. (Id. at par. 12.) Because of illness, however, he did not apply for reinstatement until February 2006, approximately one month after Melanie’s Law had taken effect. (Pl.’s Mem. at 2.)
In February 2006, Apostolopoulos applied for reinstatement of his driver’s license and was denied. (Compl. at pars. 14-15.) The RMV has refused to reinstate his license until he demonstrates that a certified ignition interlock device has been installed on any vehicle he owns, leases, or operates. (Id. at par. 15.) According to the RMVs website, “(a]n ignition interlock device is a handheld breath-alcohol monitoring device (approximately the size of a cellphone) that is electronically connected to a vehicle’s ignition. Before starting your vehicle, the IID requires you to take and pass a breath test. It also requires you to take re-tests while you are operating the vehicle.”[1] The IID prevents a vehicle from starting if it detects a blood alcohol concentration over a limit of 0.02.[2]
Mr. Apostolopoulos claims that the ignition interlock device requirement is an unnecessary hardship which would adversely affect his personal and business relationships. (Pl.’s Mem. at 3.) He submits that the device will mark him as a criminal in the eyes of his clients and colleagues. (Id.) The restriction may also effectively prohibit him from renting a vehicle when he travels for work since he has been unable to find rental agencies which offer cars with IID devices. Additionally, the average costs for the IID are $125 for installation and $85 for monthly maintenance.[3]
*617 Discussion
Standards for Preliminary Injunctive Relief
“To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction.” Tri-Nel Mgt., Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2001). Additionally, when a party seeks to enjoin governmental action, “the court also considers whether the relief sought will adversely affect the public.” Id., citing Commonwealth v. CRINC, 392 Mass. 79, 89 (1984). I apply those criteria to the present circumstances.
I. The Merits
A. The Ex Post Facto Claim
Mr. Apostolopoulos contends that the provision of Melanie’s Law relating to ignition interlock devices violates the prohibitions against ex post facto laws contained in the United States Constitution and the Massachusetts Declaration of Rights.[4] The Supreme Court has held that every law which “changes the punishment and inflicts a greater punishment, than the law annexed to the crime, when committed,” is in violation of the Ex Post Facto Clause of the United States Constitution. Colder v. Bull, 3 U.S. 386, 390 (1798). This prohibition, however, “only apply to statutes which are penal in nature.” Commonwealth v. Fourteen Thousand Two Hundred Dollars, 421 Mass. 1, 6 (1995).
1. Legislative Intent
“Whether a statute is intended to be criminal or civil depends on the Legislature’s intent, which is a matter of statutory construction.” Commonwealth v. Bruno, 432 Mass. 489, 500 (2000), citing Kansas v. Hendricks, 521 U.S. 346, 361 (1997). If a statute was intended to be civil, then it must be interpreted as such unless the “party challenging the statute provides ‘the clearest proof that ‘the statutory scheme [is] so punitive either in purpose or effect as to negate [the State’s] intention’ to deem it ‘civil.’ ” Kansas, 521 U.S. at 361, quoting United States v. Ward, 448 U.S. 242, 248-49 (1980).
The Supreme Judicial Court has, on numerous occasions, found statutes imposing conditions on eligibility for continued licensure to be remedial and non-punitive. See e.g., Luk v. Commonwealth, 421 Mass. 415, 423-29 (1995); Leduc v. Commonwealth, 421 Mass. 433, 435 (1995); Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270-71 (1992). In Luk, the Court upheld a provision of G.L.c. 90, §24 which mandates administrative suspension of the driver’s license of any individual who refuses to submit to a breathalyzer test in the event that he is arrested for operating under the influence of alcohol. The court stated that a driver’s license is “a privilege voluntarily granted” and that “[r]evocation of this privilege has long reflected public safety concerns.” Luk, 421 Mass. at 423. Further, the United States Supreme Court had previously recognized the remedial nature of the breathalyzer requirement in upholding the same provision of §24 on due process grounds. Mackey v. Montrym, 443 U.S. 1, 17 (1979).
In the present case, Apostolopoulos cites the preamble to H.B. 4403, the act amending G.L.c. 90 to reflect Melanie’s Law. The preamble to H.B. 4403 states: “Whereas, [t]he deferred operation of this act would tend to defeat its purpose, which is to increase penalties for drunk drivers in the Commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public safely.” Mr. Apostolopoulos argues that the preamble is proof that the ignition interlock device is penal, rather than remedial.
The ignition interlock device provision of Melanie’s Law is part of a large statutory scheme aimed at reducing the number of drunk driving accidents. While it is true that the statute refers to “penalties,” that allusion does not render the statute penal. See United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364 (1984). In fact, the very same statute goes on to state that it is aimed at the “immediate preservation of public safety.” Further, Apostolopoulos conceded at oral argument that not every provision of Melanie’s Law is criminal. The IID restriction, which applies only to offenders who have been convicted twice for operating under the influence of alcohol, and which lasts only for a period of two years, clearly has a primary aim of public safety. While the enforcement is particularly burdensome on Apostolopoulos, that circumstance alone does not transform the statutory sanction into criminal punishment.
B. Double Jeopardy
The Double Jeopardy Clause of the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.[5] North Carolina v. Pearce, 395 U.S. 711, 717 (1969). It applies to state prosecutions by operation of the Due Process Clause of the Fourteenth Amendment (in addition to its application as a state constitutional or common law doctrine). Benton v. Maryland, 395 U.S. 784, 787 (1969). Mr. Apostolopoulos asserts that G.L.c. 90, §24 1/2 violates the third protection of the Double Jeopardy Clause because it punishes him a second time for two crimes he was convicted of over thirteen years ago. In order to fall within the multiple punishment prohibition, however, the defendant must show that the license restriction is punishment. As noted above, the IID requirement is remedial and not punitive. Therefore, the provision of Melanie’s Law at issue here does not violate the prohibition against *618 double jeopardy. Apostolopoulos’ claim based on this argument must therefore be denied.
C. Due Process
Mr. Apostolopoulos claims that G.L.c. 90, §24 1/2, as applied to him, violates the Due Process clause of the Fourteenth Amendment of the United States Constitution. Specifically, he asserts that the statute violates both procedural and substantive concepts of due process because it unnecessarily infringes on a protectible property interest.
1. Substantive Due Process
(a). Rational Relationship
Substantive due process prohibits the government from engaging in conduct that “shocks the conscience,” Rochin v. California, 342 U.S. 165, 172 (1952), or interferes with rights “implicit in the concept of ordered liberty.” Palko v. Connecticut, 302 U.S. 319, 325-26 (1937). “In substantive due process analysis, the nature of the individual interest at stake determines the standard of review that courts apply when deciding whether a challenged statute meets the requirements of the due process clause.” Aime v. Commonwealth, 414 Mass. 667, 673 (1993). “Unless the government action in question involves an improper classification, or encroaches on constitutionally protected substantive rights, the balance of affected interests is best left to the judgment of legislative and administrative bodies, and the constitutional issue narrows to one of rational relationship between means and ends.” Spence v. Gormley, 387 Mass. 258, 270 (1982).
In order for due process protections to apply, there must be a protectible property interest at stake. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). It is long-settled that the due process clause applies to the deprivation of a driver’s license by the state. Dixon v. Love, 431 U.S. 105, 112 (1977), citing Bell v. Burson, 402 U.S. 535, 539 (1971). The property interest at stake, however, is not a fundamental right. See Rushworth, 413 Mass. at 270-71. Thus, the due process inquiry necessarily must focus on whether the legislation “bears a reasonable relation to a permissible legislative objective.” Id. at 26, quoting Pinnick v. Cleary, 360 Mass. 1, 14 (1971). In making such an inquiry, the court must keep in mind that §24 1 /2 is entitled to a presumption of validity, Marshall House, Inc. v. Rent Control Bd. of Brookline, 358 Mass. 686, 694-95 (1971), and that the plaintiff has the burden of establishing that the statute lacks a rational basis. Commonwealth v. Franklin Fruit Co., 388 Mass. 228, 235 (1983).
The Commonwealth has argued that the revocation of an individual’s license to operate motor vehicles has long been a permissible measure for public safeiy objectives. That general proposition is accurate. Luk, 421 Mass. at 423. The Commonwealth has cited Luk and Leduc to support its position that Melanie’s Law is valid under substantive due process analysis. The present case, however, is distinguishable from those precedents. Luk and Leduc both involved challenges to a provision of G.L.c. 90, §24 which provides that “(w]hoever operates a motor vehicle upon any way .. . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . .” Any person who refuses to take the breath or blood test shall have his driver’s license suspended for 120 days.
In Luk and Leduc, the connection between the means and the end was clear. If a police officer has reason to suspect that an individual is driving under the influence of liquor, he has the authority to administer a breathalyzer test, which aids the Commonwealth’s objectives by allowing authorities to “record the alcoholic content of a suspect’s bloodstream at the earliest possible moment.” Luk, 421 Mass. at 426. In the present case, the nexus to public safeiy is not nearly as defined. Here, the actions which gave rise to the suspicion of public danger occurred approximately thirteen years ago. While the government has wide discretion in regulating public roadways, under substantive due process there must be a rational relationship between the means and the end.
The Commonwealth relies also on three recent Massachusetts Superior Court decisions involving this provision of Melanie’s Law.[6] At least two of those cases, however, are clearly distinguishable from Apostolopoulos’ claim.[7] In both Gordon v. RMV and Kelley v. RMV, the plaintiffs were applying for reinstatement of their driver’s licenses after suspensions for offenses which took place in 2003. Clearly, a stronger rational relation supports the imposition of the IID requirement on individuals convicted of operating under the influence a mere three years ago than upon those convicted well over a decade ago. The Legislature, however, “is not bound to choose the best or gentlest of methods” to achieve the objective of public safety. Spence, 387 Mass. at 271. “Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.” McCulloch v. Maryland, 17 U.S. 316, 421 (1819).
(b). Retroactivity
An additional and more specific lens of substantive due process inspection applies to the present application of the statute. This provision of Melanie’s Law is operating retrospectively upon Mr. Apostolopoulos. It is enforcing sanctions against him for conduct committed thirteen years before its enactment. By nature, legislation is usually prospective. Retroactivity is permissible but suspect because it conflicts with a cultural sense of fairness. The sense of fairness is that persons subject to the law should have the opportu *619 nity, generally or specifically, to know the rules, to understand the consequences of deviation from them, and to behave accordingly. In criminal law the maxim is nulla poena sine lege. The constitutional prohibition against retroactive or ex post facto criminal litigation serves this policy of fairness.
For retroactive civil sanctions, a more permissive due process assessment of fairness has developed. It appears to rest upon the premise that a civil sanction is inherently less severe than a criminal one. The operation of a retroactive statute will satisfy the due process requirement of “reasonableness” (a) if it serves an important public interest of health, safely, or welfare; (b) if it restricts or burdens an affected person’s right or interest in liberty or property of less than fundamental character; and (c) if it diminishes that right or interest to a rationally measured or calibrated degree. See American Manufacturers Mutual Insurance Co. v. Commissioner of Insurance, 374 Mass. 181, 189-96 (1978) (authorities collected).
In the circumstances of this case, the ignition interlock provision serves the very important purpose of highway safety. It operates as a result of two convictions, and not a single aberrant mistake. It restricts a significant personal freedom and property interest: an individual’s ability to drive as a means of conducting daily life and the pursuit of a livelihood.[8] However, as a matter of degree, it does not remove that right or interest; it burdens it for a period of two years, at an intermediate expense, with some incidental stigma.
In the present circumstances, it passes the test of reasonableness, but barely. Mr. Apostolopoulos’s offenses are thirteen years removed from the imposition of the ignition interlock device. During the interim the RMV twice approved him as a qualified unrestricted driver for periods exceeding a decade. He accumulated no similar offenses during that span of time. Consequently, the rational relationship of the sanction to its public safety purpose is approaching an outer limit.
One can imagine situations in which a young driver might incur two convictions and then progress without fault through multiple stages of life to encounter the ignition interlock requirement as an elderly driver decades later. As applied to that category of case, the provision would confront a stronger constitutional challenge. In this case, however, the law is operating just at the outer rim of reasonableness.
2. Procedural Due Process
Procedural due process requires “that a statute or governmental action that has survived substantive due process scrutiny be implemented in a fair manner.” Aime, 414 Mass. at 674, citing United States v. Salerno, 481 U.S. 739, 746 (1987). As in substantive due process analysis, procedural due process focuses on the classification of the interest at stake. “(T]he individual interest at stake must be balanced against the nature of the governmental interest and the risk of erroneous deprivation of liberty or property under the procedures which the State seeks to use, so as to determine whether the due process requirements of the Fourteenth Amendment have been met.” Aime, 414 Mass. at 675, citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976).
As previously noted, “[t]he State’s right to regulate licensing ... is constrained by due process limitations.” Luk, 421 Mass. at 428. “The Fourteenth Amendment’s procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits.” Board of Regents, 408 U.S. at 576. “Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood.” Bell, 402 U.S. at 549. In this context, Apostolopoulos’s property interest in renewing his driver’s license must be balanced against the governmental interest in keeping potential drunk drivers off the roadways.
Mr. Apostolopoulos argues that G.L.c. 90, §24 1/2 violates procedural due process because the statute does not require that the RMV determine whether he presents an actual danger to public safety. The Legislature, however, has determined that all repeat operating-under-the-influence offenders are subject to the IID requirement. The authority to select the most effective procedures for dealing with a problem as pervasive and troublesome as drinking and driving belongs to the Legislature. Luk, 421 Mass. at 429. While a court might prefer to leave the RMV some sort of discretion in cases involving offenses as old as Apostolopoulos’s, the Legislature is not confined to individualized determinations in order to implement public safety. Spence, 387 Mass. at 749.
The provision of Melanie’s Law regarding the ignition interlock device restriction contains no requirement that individuals affected by it must pose some sort of danger to public safety. The statute turns on whether an individual has twice been convicted of operating under the influence of alcohol. In this respect, offenders have already had two procedurally safeguarded opportunities to contest. “Unless [plaintiff] can show that [the] substantive rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise.” Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 7-8 (2003).
“[W]hen prompt postdeprivation review is available for correction of administrative error, [courts] have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be.”[9] Mackey, 443 U.S. at 13. In the present case, the predicates for an IID restriction under Melanie’s Law are objective facts easily attainable by government officials. There is minimal risk of erroneous deprivation of an *620 individual’s driver’s license. Thus, the post-deprivation procedural safeguards are satisfactory under the Fourteenth Amendment’s Due Process Clause.
II.Irreparable Harm to Mr. Apostolopoulos
Our discussion of the merits has anticipated the remainder of the preliminary injunction calculus. The ignition interlock device will inflict harm upon Mr. Apostolopoulos. That harm is burdensome, but it is limited in time and in degree. Most importantly, the court must measure it in light of the probable merits. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617 (1980). The probable merits favor the RMV.
III.Countervailing Harm to the Registry of Motor Vehicles
IV.The Public Interest
In a case in which the applicant seeks to enjoin a governmental program serving the public safety and welfare, the final criteria merge. In light of the probable merits, what harm would an injunction cause to the public safety objectives of the defendant agency? In this instance, the danger to the public from the unrestricted driving of Mr. Apostolopoulos seems slight. He has driven for more than ten years without incident. He does not, however, enjoy a likelihood of victory against the application of the law for all the reasons canvassed in the merits discussion. The constitutional standards permit the Legislature to fear rationally that two prior convictions of even thirteen years ago increase the risk of relapse and warrant the special deterrence of the ignition interlock device. They permit it to legislate with an abundance of caution for the public interest against the general danger of intoxicated driving.
Conclusion
The assessment of the merits, the comparison of harm, and the weight of the public interest require denial of preliminary injunctive relief.

 Ignition Interlock Devices, Massachusetts Registry of Motor Vehicles (June 2006), available at http://www.mass.gov/rmv/rmvnews/2006/ignition_interl ock_brochure.pdf.

The legal limit for blood alcohol content in Massachusetts is 0.08. G.L.c. 90, §24.

Press Release, Registry of Motor Vehicles, Healey Unveils Ignition Interlock Devices for Repeat Drunk Drivers (January 3, 2006), available at: http://www.mass.gov/rmv/rmvnews/2006/rgnitioninterlo ck.htm.

Article 1, Section 9 of the United States Constitution states that “[njo Bill of Attainder or ex post fació Law shall be passed.” Article 24 of the Massachusetts Declaration of Rights states that “(I]aws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government. ”

The Fifth Amendment of the United States Constitution states that no person shall “be subject for the same offence to be twice put in jeopardy of life or limb.”

Gordon v. RMV, Cv. No. 06-239, 20 Mass. L. Rptr. 563, 2006 WL 708658 (Bristol Super.Ct. Mar. 16, 2006) (MacDonald, J.); Kelley v. RMV, Cv. No. 06-2520 (Suffolk Super.Ct. June 22, 2006) (Locke, J.); Palmer v. Board of Appeals on Motor Vehicle Lidb. Policies & Bonds, Cv. No. 06-323 (Barnstable Super.Ct. June 21, 2006) (Nickerson, J.).

The facts of the third case are not currently accessible.

Massachusetts decisions characterizing a driver’s license as a “privilege,” e.g. Luk, 421 Mass. at 423, may be underestimating its status as a liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment. See e.g., Bell, 402 U.S. at 539 (1971).

Under G.L.c. 90, §24 1/2, “[a] person aggrieved by a decision of the registrar pursuant to this section may file an appeal in the superior court of the trial court department.”