*212 JUDGEMENT (Modified After Completion of Remand)
MARK BUTTERFIELD, Chief Judge.
PROCEDURAL HISTORY
This case is back before the Court on petition of the appellant after remand to the HCN Gaming Commission, hereafter “Commission,” in April 1997. The Commission had suspended petitioner’s gaming license for a period of one year by decision dated June 21, 1996. The petitioner sought judicial review of the Commission decision and relief in the form of reinstatement to his former position as Bingo/Floor Checker/Caller at the Ho-Chunk Casino and the return of his gaming license. The Court reviewed his case and found that much of the respondent’s action was not supported by substantial evidence in the record in violation of Gaming Ordinance § 819(b). The Court found that the Commission impermissibly relied on allegedly derogatory evidence outside the record and denied the petitioner the right to know about that information and to respond or rebut that information in any meaningful way.
Rather than reverse the Commission as would seem appropriate in this type of case, the Court remanded the case back to the Commission to rectify its error and give Mr. Rave an opportunity to respond to the derogatory information the Commission relied upon. Rather than engage in this inquiry, the Commission apparently gave Mr. Rave an either/or offer: Either get your job back or get compensation for six months plus health benefits. Exhibit B. During the pendency of this case, the one year suspension period lapsed, but the Commission did not restore Mr. Rave’s license on June 22, 1997 as would seem appropriate.
Mr. Rave brought this case back for review after refusing to accept the Commission’s offer based on a claim that HCN Gaming Ordinance § 1101(c)(vii) is an unconstitutional infringement upon the Judiciary’s authority to grant relief pursuant to HCN Const. Art. VII, § 6(a). Indeed, despite counsel for the Commission’s protestations that the suspension should have been over by the time of oral argument, he could offer no reason whatsoever as to why the Commission did not abide by the terms of its own suspension and reinstate Mr. Rave’s license. Thus, Mr. Rave was not afforded any relief despite his seeming victory in Court.
After briefing, this Court heard oral argument on September 26, 1997. This case is now proper for decision.
*213 APPLICABLE LAW
HCN Constitution, Art. VII
§ 5. Jurisdiction of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs, and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
HCN Constitution, Art. X(l)(a)(3)
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(3) subject any person for the same offense to be twice put in jeopardy;
HCN Amended and Restated Gaming Ordinance
§ 819. Evidence.
18 (b) All evidence, including records and documents in the possession of the Commission or which the Commission desires to avail itself, shall be duly offered and made part of the record in the case. Each party shall be afforded adequate opportunity to rebut or offer countervailing evidence.
1101 Appeal of Commission Decision to the Trial Court. COO
(a)Appellants. A License Applicant may appeal the decision of a License or conditions placed upon a License as provided by this Section. A party aggrieved by a decision ol the Commission pursuant to an enforcement proceeding may appeal the decision as provided in this Section.
(b) Jurisdiction. The tribal court shall have jurisdiction to review all such decisions, except decisions denying a License under § 1203(a)(iv) which shall be reviewable only by the Legislature.
(c) Procedures. Appeals to the tribal court shall be brought as provided by tribal law except that the tribal court shall apply the same standard of review set out in subsec. (v) below.
(i) Filing Fee. An appellant may file a petition of review and three (3) duplicate copies with the Clerk of the Ho-Chunk Nation trial court requesting that the trial court review a decision of the Commission. The court shall certify all copies, retain one copy for the record, and forward one each to the appellant, the Commission, and the Attorney General of the Department of Justice. The petition must be filed within forty-live (45) days of the decision, unless additional time is granted by the court, and shall include a copy of the Commission’s Decision and Order appealed from and contain a short statement of the reason for the appeal.
(ii) Trial Court Review of the Record. Upon receiving a petition of review which conforms to the requirements of this Section, the Commission shall have forty-five (45) days to transmit the record of its decision and to respond to the petition. The court shall schedule a hearing within thirty (30) days after receipt of the Commissions record and response to the petition to consider the appeal. A petition of appeal shall not be scheduled for review unless the ap *214 pellant has paid all costs of the investigation and proceedings before the Commission and, if the Commission imposed a fine in the decision that is the subject of the appeal, the appellant shall post bond in the amount of the fine. The trial court judge shall preside at the meeting on the appeal. The court, in its discretion, may deny the appeal on the record and any written statements submitted, or it may grant the petition for review.
(v) Decisions. Decisions of the trial court shall be based upon a review of the record of the Commission’s proceedings, oral arguments, if any, and any written statements submitted. The Trial Court shall not exercise de novo review of Commission decisions and shall give proper deference to the administrative expertise of the Commission and to determinations of credibility. The tribal court shall not set aside or modify any decision unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law. The trial court shall issue a written decision on all appeals.
(vii) Relief afforded to appellants. The Trial Court of the Ho-Chunk Nation is limited to the following relief for actions under this Ordinance:
a. In the case of employee or vendor licensing determinations, the Trial Court is limited to remanding determinations to the Gaming Commission for reconsideration consistent with its findings should it find that the Gaming Commission acted in an arbitrary and capricious manner or its decision was unsupported by substantial evidence or contrary to law.
b. Should the Trial Court remand a determination of the Gaming Commission for reconsideration, the Commission, upon reconsideration, may award up to six (6) months in lost wages and health care costs, if any (minus any compensation, including unemployment benefits, that an employee may have received during a suspension). In the case of a vendor, the Commission may refund a license fee remitted to the Commission.
e. Nothing in this Ordinance shall be construed to grant a party any remedies other than those included in this section.
FINDINGS OF FACT
The Court makes the following additional findings of fact which occurred between the Court’s April 23, 1997 decision and today.
1. Upon remand, the Commission failed to restore Mr. Rave’s license, conduct a hearing or afford him monetary damages of six months in lost wages and health care costs.
2. The Commission offered Mr. Rave an either/or proposition on remand: either accept your license and job back or six months back pay plus benefits, but not both, or it would hold a hearing.
3. Petitioner rejected the Commission’s offer, but it did not hold a hearing.
4. Petitioner continues to remain in suspended status without a gaming license despite having served out the full year suspension.
DECISION AND ANALYSIS
This case challenges the procedures of the Commission when considering what relief to afford a successful appellant upon remand after a finding that the Commission’s procedures and methods violated fundamental fairness, the Gaming Ord. *215 § 819(b), its own decision and its own charge of office. Under the Gaming Ordinance affording relief to the appellant is given to the very agency which had been found to violate his rights. See, Gaming Ord. § 1101(c)(vii)(b) (“[T]he Commission, upon reconsideration, may award up to six (6) months in lost wages and health care costs, if any (minus any compensation, including unemployment benefits, that an employee may have received during a suspension.”)).
In the context of this case it is especially troubling because the Commission went outside the record to find and deliberate upon information allegedly[1] derogatory to the petitioner, Mr. Rave. When this was found by the Court to violate Gaming Ord. § 819(b), the Commission ignored that finding. Rather than correct its error, or in the alternative afford Mr. Rave some modest relief, without any explanation, it gives him an arbitrary choice. ‘Either accept your license back or take the money, or we’ll hold a hearing.’ The arbitrary nature of this choice is manifest by the fact that without any due process, i.e,, notice and an opportunity to be heard, the Commission apparently modified its previous suspension and made it a de facto revocation. The Commission gave no reason for this action nor engaged in any rational decision making to which the Court may defer. Instead, it engaged in “in your face” strong arm action. This is arbitrary, capricious and an abuse of discretion.
The Commission argued that the statutory scheme affords it complete discretion in whether to afford relief. It points out that the language of the statute says “may award” relief and that ‘may’ in most situations has a permissive meaning. The Commission argues that it has the discretion under the statute not to grant any relief. However, the Commission denied any knowledge of a common maxim of statutory construction that “Courts not infrequently construe ‘may’ as ‘shall’ or ‘must’ to the end that justice may not be the slave of grammar.” Black’s Law Dictionary p. 883 (5th Ed. 1979). During oral argument, counsel for the Commission refused to concede that perhaps the Commission’s discretion remained bounded by a standard of reasonableness. Under the given set of facts, the Commission desires unfettered discretion. This results in the unsettling proposition that, in order to secure a resolution of the claims before this Court, plaintiff must return to the very entity which stripped him of a gaming license and expect to be treated equitably and without animus or ill-will. While a level of objectivity might be expected from a typical agency, the Commission posits that such objectivity cannot be imposed upon their decisions, in that the decisions of the Commission remain absolutely discretionary.
The Court holds that the Commission’s interpretation of “may award” relief as giving it complete discretion to completely deny relief is overly broad and violates the remedial purpose of the statute. There can be no doubt that the section of the ordinance which grants appellate review to the Courts and provides a remedy as Gaming Ord. § 1101 does is “remedial legislation.” See, Sutherland Statutory Construction, Vol. 3, p. 147 § 60.01. (5th Ed. 1992). “Remedial statutes are liberally construed to suppress *216 the evil and advance the remedy. The policy that a remedial statute should be liberally construed in order to effect the remedial purpose for which it was enacted is firmly established .... A liberal construction is ordinarily one which makes the statutory rule or principle apply to more things or in more situations than would be the case under a strict construction.” Id.
The Court finds that the Commission’s construction of its authority under Gaming Oedinance § 1101(c)(vü)(b) is overly broad and a strict construction which reads granting relief completely out of the statute. This is without merit. The Court concludes that the Commission is ordinarily entitled to some discretion in granting relief, but that discretion is limited and must be based on a rational discussion of the factors as to why it decided to grant less relief than might ordinarily be apparent. The decision to deny relief must be supported by substantial evidence and compelling reasons for the denial of relief, which is itself subject to appellate review by the Courts. If an appellant has been successful and the Commission’s action has been found by the Court to be arbitrary, capricious, an abuse of discretion, not supported by substantial evidence or contrary to law, the Commission’s discretion is limited to awarding no more relief than the successful appellant suffered. The Commission is also allowed some discretion because it must find out how much unemployment compensation the petitioner received in order to calculate the relief. That discretion is limited.
 It is a well-settled tenet of administrative law that agency decisions must prove reasonable under the circumstances. Reasonableness may be determined through a demonstration of full consideration of all relevant matters and a logical and articulated connection between the decision and its underlying rationale. Satisfying these elements may avoid agency action which appropriately could be labeled “arbitrary and capricious” under the law. The effective oversight of the agency process by a court of competent jurisdiction does not constitute overreaching or a usurpation of any kind, for courts represent an appropriate and critical balance against the threat of seemingly random or senseless agency decision-making. In the end, a court is not telling an agency what decision it must or should reach. Rather, a court enjoys an inherent power to enforce a standard of reasonableness on an agency which requires it to show how and why it came to a decision. See, e.g., Motor Vehicle Manufacturers Assoc, of U.S., Inc. v. State Farm. Mutual Ins. Co., 463 U.S. 29, 56-57, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (“While the agency is entitled to change its view on the acceptability of [the item in issue], it is obligated to explain its reasons for doing so.... An agency’s view of what is in the public interest may change, either with or without a change in circumstances. But an agency changing its course must supply a reasoned analysis .... ”), quoting, Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (1970), cert. denied, 403 U.S. 923, 91 S.Ct. 2229, 2233, 29 L.Ed.2d 701 (1971). Moreover, an agency must develop a record sufficient enough to justify its decision through which a court may later examine whether or not that same agency exceeded the scope of its authority or acted in an arbitrary and capricious manner. See, e.g., Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 419-20, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).
The present case reveals the weakness of the statutory scheme. The Commission penalized the appellant and suspended, but did not revoke, his license. The appellant was without a job and pursued an appeal—even pledging a share of *217 his per capita as bond so that he could pursue the appeal. The Commission was found by the Court to have violated its own ordinance in the manner of the suspension and the matter was remanded back to the Commission to correct its procedural errors and/or award Mr. Rave relief.
Nonetheless, on remand the Commission not only denied the appellant any relief, but apparently sua sponte, levied a new penalty as of June 22, 1997 for an ongoing suspension without any notice, any hearing, any additional evidence, or affording Mr. Rave any way to respond. This action is without foundation in law. It is arbitrary. It is capricious. It is an abuse of discretion. It is without substantial evidence. It is contrary to law. This is the administrative equivalent of double jeopardy or to be twice punished for the same transgression. See, HCN Const. Art. X.(l)(a)(3).
In part because the Commission represents the lone entity to address appeals from one of its own decisions, the argument that the Commission enjoys absolute discretion at all points along the line is fundamentally flawed. As a quasi-judicial body charged with administering the gaming laws of this Nation and the federal government, the Commission bears a significant burden which should not be dismissed with an explanation of “Because I said so, that’s why.”[2]
The liberal construction of the Gaming Oed. § 1101(c)(vii)(b) that “may award” means “shall award” relief commensurate with the appellant’s demonstrated damages unless a contrary decision based on compelling reasons not to award relief is made and supported by substantial evidence gives more appropriate meaning to the remedial statute in question without finding it unconstitutional. Findings of unconstitutionality should be avoided if at all possible.[3]
CONCLUSION
For all the reasons cited above, this case is remanded to the Commission to end the suspension which it limited to one year ending on June 22, 1997. The Commission is also ordered to provide monetary relief to the appellant commensurate with his being thrown out of work for over a year., i.e. six months wages plus health care costs minus unemployment compensation. It is now too late to reconvene a hearing to correct its error. Further action along this line will be seen by the Court as an attempt at retribution, which is specifically prohibited. The Court orders further that the Commission exceeded its authority when, whether by action or inaction, it failed to end the suspension of Mr. Rave on June 22, 1997. Should the Commission fail to restore Mr. Rave’s license within ten days it shall risk being found in contempt and could face civil penalties equal to Mr. Rave’s daily wage as fines.
In light of the construction given by the Court and the order of relief given, the Court declines to find Gaming Ordinance § 1101 (c)(vii)(b) an unconstitutional limitation on the remedial powers of the Court.
All parties have the right to appeal a final judgement or order of the Trial Court. If either party is dissatisfied with the decision rendered by this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court. The Notice of Ap *218 peal, which must also show that service was made upon the opposing party, must be filed within thirty (30) calendar days from the date that the final judgement or order is rendered. In addition, the Notice of Appeal must explain why the party appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must be in conformity with the Ho-Chunk Nation Rules of Appellate Procedure, particularly Rules 7 through 10.

. The Court uses the term "allegedly” in a deliberate fashion due to the fact that this information has never been made a part of the record to the Court, even to this day—15 months after the suspension. The Court is bound by the record created by the Commission. If it alleges some fact in support of its decision, it should be in the record or its decision risks being found lacking in substantial evidence, as here.

. Often referred to in the law with the Latin phrase, ipse dixit, such decisions reflect an absence of reason and at best circular logic.

. See, e.g., Ashwander v, Tennessee Valley Authority, 297 U.S. 288, 346-48, 56 S.Ct, 466, 80 L.Ed. 688 (1936) (J. Brandeis, concurring).