ALFRED J. SILVA *vs.* DIRECTOR OF THE DIVISION OF MARINE
FISHERIES.

No. 97-P-1647.

Barnstable. November 13, 1998. - April 6, 1999.

Present: LAURENCE, DREBEN, & LENK, JJ.

*Division of Marine Fisheries. Lobster. Permit. Constitutional Law,* Double
jeopardy. *Statute,* Construction. *Notice,* Administrative hearing.

In an administrative adjudicatory proceeding of the Division of Marine Fisher-
ies for possession of egg-bearing female lobsters in violation of G. L.
c. 130, § 41, the suspension of a lobster fisherman's lobster permit for two
years and a prohibition of the permit's transfer were civil sanctions for the
purpose of protecting marine fisheries and were not punitive, and principles
of double jeopardy were not implicated by reason of the fisherman's previ-
ous acquittal on criminal charges of possessing egg-bearing female lobsters
in violation of G. L. c. 130, § 41. [610-613]
A lobster fisherman received adequate notice of an administrative hearing
before the Division of Marine Fisheries. [613-614]

CIVIL ACTION commenced in the Superior Court Department on
May 16, 1996.

The case was heard by *Catherine A. White,* J.

*E. James Veara* for the plaintiff.

*Adam Simms,* Assistant Attorney General, for the defendant.

DREBEN, J. Although acquitted of the criminal charge of pos-
sessing egg-bearing female lobsters,[1] at a subsequent administra-

---

[1] In relevant part, G. L. c. 130, § 41, provides:

"Whoever takes, sells or has in possession any female lobster bearing
eggs . . . shall be punished for the first offense by a fine of not less
than fifty nor more than one hundred dollars for every such lobster . . .
but a person who takes any such lobster and immediately returns it
alive to the waters from which it was taken shall not be subject to such
penalty."

tive adjudicatory proceeding of the Division of Marine Fisheries (division), Alfred Silva was found to have been in possession of eighty-three egg-bearing female lobsters. As a result, the defendant, the director of the division, suspended Silva's lobster permit for two years and prohibited any transfer of his permit. Silva brought this action[2] claiming that the administrative hearing violated the prohibition against double jeopardy contained in the Fifth Amendment to the United States Constitution and that the notice he received of the administrative hearing was inadequate, violated G. L. c. 30A, § 11, and deprived him of his constitutional right to due process. Silva and the defendant filed cross motions for judgment on the pleadings; the pleadings included the administrative record. A judge of the Superior Court affirmed the decision of the division. We affirm.

On September 4, 1995, during an administrative inspection at sea of the fishing boat "The Seagull," environmental police officers[3] found eighty-two live, egg-bearing female lobsters, all with yellow rubber bands on their claws, kept separately from the remainder of the catch of "The Seagull."[4] Silva, the captain of the boat and holder of a lobster permit, was on board during the inspection. Section 41 of c. 130, see note 1, *supra*, sets forth the criminal offense of possessing "any female lobster bearing eggs." Charged with violating that statute, Silva was acquitted after a trial in the Orleans Division of the District Court Department. Subsequently, one of the environmental police officers who had participated in the administrative inspection and had taken photographs of the egg-bearing lobsters filed a notice of claim for an adjudicatory proceeding, and the division issued an order "to show cause [to Silva] why [his] coastal commercial lobster permit no. 9794[5] should not be suspended or revoked

---

[2]Although Silva's complaint purported to seek relief under G. L. c. 231A, the Superior Court judge properly viewed it as an appeal under G. L. c. 30A, § 14. See *Rosenfeld* v. *Board of Health of Chilmark*, 27 Mass. App. Ct. 621, 624 (1989), and cases cited.

[3]The officers were from the Division of Law Enforcement within the Department of Fisheries, Wildlife and Environmental Law Enforcement of the Executive Office of Environmental Affairs.

[4]An additional live female lobster bearing eggs with yellow rubber bands on its claws was contained in a barrel with the legal catch.

[5]The permit number was incorrect, but the record suggests that nothing hinges on that error.

for violations of the provisions of G. L. c. 130, § 41."[6]

1. *Double jeopardy.* Double jeopardy is violated if multiple criminal prosecutions are brought or multiple criminal punishments are imposed for the same offense. See *Hudson* v. *United States*, 522 U.S. 93, 99 (1997); *Luk* v. *Commonwealth*, 421 Mass. 415, 430 (1995). The State may, however, impose both criminal and civil sanctions for the same act or omission. The double jeopardy clause requires only that the State not punish nor attempt to punish twice for the same offense. *Id.* at 420.

Relying on *Luk* v. *Commonwealth*, 421 Mass. 415, the Superior Court judge analyzed G. L. c. 130 and ruled that although "the suspension of the plaintiff's permit does have punitive aspects, its main purpose is to protect the public resources of marine fisheries rather than punishment and is properly characterized as a non-punitive measure."

Subsequent to the opinion in *Luk* (and to the judge's decision in this case), the Supreme Court of the United States, in *Hudson* v. *United States*, 522 U.S. 93, "clarified the proper analysis for determining whether civil sanctions constitute punishment." *Powers* v. *Commonwealth*, 426 Mass. 534, 537-538 (1998). See *Commonwealth* v. *Stone*, 45 Mass. App. Ct. 259, 262 (1998). Under that analysis, it has become even more evident that the suspension of Silva's permit is a civil sanction.

"Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Hudson, supra* at 99. The court must first determine whether the Legislature has expressly or impliedly indicated whether the penalty is civil or criminal. *Ibid.* If it is determined that the Legislature has intended a civil penalty, the court must next examine "whether the statutory scheme [is] so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Ibid.* (internal citations and quotations omitted). Certain factors, set forth in the margin,[7] provide "useful guideposts" on this second inquiry, but "these factors must

---

[6]The order went on to state: "to wit: on or about September 4, 1995 you were in possession of 83 egg bearing female lobsters, all with yellow bands on their claws. . . . This adjudicatory proceeding is held in accordance with the hearing provisions of G. L. c. 30A . . . . You have the right to be represented by counsel and to view the records of the Division of Marine Fisheries."

[7]The *Hudson* court listed, 522 U.S. at 99-100, the following factors mentioned in *Kennedy* v. *Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963), as "useful guideposts":

be considered in relation to the statute on its face . . . and only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100. (internal citations and quotations omitted).

Even a brief examination of G. L. c. 130 leaves no doubt as to the legislative intent. The sanctions the director is authorized to impose are an integral part of his function to promote the conservation of marine resources. The powers given to the director point to a legislative purpose to "conserve, improve and increase the supply of fish in the coastal waters," and to promote and develop the commercial fishing industry. G. L. c. 130, § 17(3), (4). He is to cooperate with coastal cities and towns for the purpose of increasing the supply of shellfish and exterminating the enemies thereof. G. L. c. 130, § 20. Lobsters are specially protected (as are scallops) and a permit from the director is required to fish for lobsters or edible crabs. G. L. c. 130, § 38. For other fish, a permit is required to fish for commercial purposes. G. L. c. 130, § 80.

The director is authorized to adopt rules and regulations "necessary for the maintenance, preservation and protection of . . . marine fisheries resources," G. L. c. 130, § 17(10), as well as to issue rules and regulations "relative to the form, contents, and use of all permits issued under this chapter" (with certain exceptions). G. L. c. 130, § 80.[8] He is given the power to revoke permits for violation of his regulations, one of which specifi-

---

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment — retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

[8]Section 80 provides:

"The director shall revoke and cancel and require the surrender of any permit issued under this chapter if, in his opinion, after a hearing, after due notice by him or some person designated by him, the holder has violated any rule or regulation of the director."

cally provides that "any permit . . . may be suspended or revoked for . . . violation of any provision of M.G.L. c. 130." 322 Code Mass. Regs. § 7.01(9) (1993).[9] The administrative power to revoke or suspend licenses is obviously designed to assist the director in conserving the supply of fish and in developing the fishing industry. "That such authority was conferred upon [the director of an] *administrative agenc[y]* is prima facie evidence that [the Legislature] intended to provide for a civil sanction" (emphasis supplied). *Hudson, supra* at 103.

Silva argues that the proper standard to be used in the second inquiry — whether the statutory scheme is so punitive as to transform what was intended as a civil penalty into a criminal one — requires an analysis of the totality of the circumstances with specific emphasis on how the regulatory scheme was *applied to him* and not on the underlying regulatory goals of G. L. c. 130 and 322 Code Mass. Regs. This approach was explicitly rejected in *Hudson, supra* at 96, 101-102, disavowing in large part the method of analysis used in *United States* v. *Halper*, 490 U.S. 435 (1989). Assessing (in accordance with *Halper*) the actual sanctions imposed to determine whether a particular sanction is "punitive," is "ill considered" and "unworkable." *Hudson, supra* at 101, 102. Rather, the statute must be evaluated on its face to determine whether it is so punitive as to be deemed criminal.

We now turn to the factors which *Hudson* considered "useful guideposts" for determining whether the banking statute involved in that case was so punitive as to render it criminal. See note 7, *supra*. We quote, paraphrase, and adapt the *Hudson* analysis, *supra* at 104, to evaluate the sanctions in the statute at hand, c. 130, § 80. First, the "revocation of a privilege voluntarily granted," such as the suspension or revocation of a license or permit, "is characteristically free of the punitive criminal element." *Hudson, supra.* See *Luk* v. *Commonwealth*, 421 Mass. at 423; *Powers* v. *Commonwealth*, 426 Mass. at 539. "Second, the sanctions imposed do not involve an 'affirmative disability or restraint,' as that term is normally understood." *Hudson, su-*

---

[9]Even in the absence of a regulation such as § 7.01(9) authorizing the director to suspend permits, the statutory power to revoke permits given in G. L. c. 130, § 80, includes within it the authority to suspend them. See *McGonigle* v. *The Governor*, 418 Mass. 147, 151 (1994); *Tobin* v. *Sheriff of Suffolk County*, 377 Mass. 212, 214 (1979). See also *Fragopoulos* v. *Rent Control Bd. of Cambridge*, 408 Mass. 302, 304 (1990).

*pra.* While Silva is prohibited from fishing for lobsters for a period and may not transfer his permit, this is "certainly nothing approaching the infamous punishment of imprisonment." Third, the sanction does not come into play "only on a finding of scienter." That the conduct for which sanctions are imposed may also be criminal is insufficient to render the sanction criminally punitive. Finally, even though the suspension of the permit "will deter others from emulating [Silva's] conduct, a traditional goal of criminal punishment[,] . . . the mere presence of this purpose is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." The sanction "at issue here, while intended to deter future wrongdoing, also serve[s] to promote" the conservation of marine resources in a rational and direct manner. "To hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine" the State's ability to engage in effective regulation of lobsters and other marine resources. *Hudson, supra* at 105.

In sum, there is little showing, let alone the "clearest proof that we require," *Hudson, supra* at 104, 105, that the suspension of Silva's license and the prohibition against transfer are punitive. The double jeopardy clause is not implicated.[10]

Silva also argues that he was punished more severely than if he had been found guilty of the criminal offense because c. 130, § 2, provides for a license suspension of one month for the first violation of a law or regulation relating to marine fish and fisheries. That "the consequence for the subject of the proceeding may be as, or more severe, than some criminal sanctions" is not determinative. *Hill, petitioner,* 422 Mass. 147, 152, cert. denied, 519 U.S. 867 (1996). *Powers* v. *Commonwealth,* 426 Mass. at 539-540 (administrative suspension of driver's license had potential of lasting longer than suspension under criminal statute).

2. *Inadequate notice.* Silva points to the fact that the order to show cause, see note 6, *supra,* did not notify him that the divi-

---

[10]Silva's additional argument that the division's proceedings were barred on principles of collateral estoppel because of his previous acquittal is likewise without merit. Preclusive effect is denied to a judgment where the prior proceeding, here the criminal trial, required a heavier burden of proof to find guilt than the civil proceeding. *Helvering* v. *Mitchell,* 303 U.S. 391, 397-398 (1938). Restatement (Second) of Judgments §§ 28(4), 85 & comment g, at 300 (1982).

sion intended to raise conservation concerns at his revocation hearing. Without such notice, Silva claims, he was not afforded a reasonable opportunity to prepare and present evidence. Silva misconstrues the object of the hearing. While the legislative purpose to protect the lobster population was what gave the division the authority under the statute to conduct the hearing, the issue before the hearing officer was whether Silva's license should be revoked or suspended in view of the allegations that he had violated G. L. c. 130, § 41. Of that issue he had notice. Whether his actions impeded conservation was a matter irrelevant to the inquiry.[11] We note that Silva would have been able, but chose not, to introduce evidence that he came within the exception of c. 130, § 41, of immediately returning the lobsters to the water from which they were taken.

Since there was here no violation of the prohibition against double jeopardy, and since Silva received adequate notice of the administrative hearing, the judgment of the Superior Court is affirmed.

*So ordered.*

---

[11]No evidence was introduced by anyone on this issue.