*277 ORDER (Granting Defendant’s Motion for Summary Judgment)
TODD R. MATHA, Associate Judge.
INTRODUCTION
The Court must decide whether to uphold or reverse a licensing determination of the Ho-Chunk Nation Gaming Commission [hereinafter Gaming Commission]. The Court finds that the license revocation represents a reasonable civil penalty. The plaintiff forfeited her privilege to a gaming license by posing a potential risk to the public interest.
PROCEDURAL HISTORY
The plaintiff, Kerry A. Hiller, initiated the current action by filing a Complaint with the Court on September 22, 1999. Consequently, the Court issued a Summons accompanied by the above-mentioned Complaint and attachments on September 22,1999, and served the documents upon the defendant, Gaming Commission. The Summons informed the defendant of the right to file an Answer within twenty (20) days of the issuance of the Summons pursuant to the Ho-Chunk Nation Rules of Civil Procedure [hereinafter HCN It Civ. *278 P.], Rule 5(B). The Summons also cautioned the defendant that a default judgment could result from failure to file within the prescribed time period.
The defendant, by and through Attorney Michael B. Wacker, filed a timely Answer and Motion to Dismiss on October 13, 1999, serving such documents on the plaintiff via first class mail. The Court subsequently entered its Order (Motion Hearing) on October 25, 1999 accompanied by Notice(s) of Hearing, informing the parties of the date, time and location of the Motion Hearing!Scheduling Conference. Pri- or to convening the Heariug/Conference, Attorney Paul B. Millis filed an Entry of Appearance on behalf of the plaintiff on November 18, 1999, requesting that the Court postpone the proceeding due to a previously scheduled engagement. The Court granted the postponement in its November 22, 1999 Order (Postponement of Motion Heariug/Sched-uling Conference) pursuant to HCN R. Civ. P. 45, and ordered the parties to reschedule the proceeding within seven (7) days.
On November 24, 1999, the plaintiff proposed a mutually acceptable date to appear in Court. On the same day, the defendant filed a Motion for Summary Judgment accompanied by a Memorandum in Support of Motion for Summary Judgment. The Court responded by mailing Notice(s) of Hearing on November 30, 1999, finalizing the date for the rescheduled Motion Hearing/Scheduling Conference. The following parties appeared at the December 6, 1999 Hearing/Conference: Attorney Paul B. Millis and' Attorney Michael B. Wacker.
The defendant withdrew its standing October 13, 1999 Motion to Dismiss at the Motion Heating,/Scheduling Conference. Therefore, the Court proceeded to schedule the action since the plaintiff received insufficient notice of her need to respond to the Motion for Summary Judgment. See HCN R. Civ. P. 17 and 20. The Court entered the Scheduling Order on December 9, 1999. The plaintiff then filed her Amended Complaint on December 13, 1999. Consequently, the defendant submitted its Amended Answer on December 23, 1999 in accordance with the ten (10) day time limitation set forth in HCN R. Civ. P. 19(A).
On January 6, 2000, the defendant reasserted its earlier motion in the Defendant’s Second Notice and. Motion for Summary Judgment. The defendant accompanied this motion with a Memorandum in Support, of Motion for Summary Judgment. Consequently, the plaintiff submitted her Brief in Opposition of Defendants’ (sic) Motion for Summary Judgment on January 17, 2000 in accordance with the ten (10) day time limitation set forth in HCN R. Civ. P. 19(A). The Court responded by entering an Order (Motion Hearing) on January 18, 2000 accompanied by Notice(s) of Hearing, informing the parties of the date, time and location of the Motion Hearing. The following parties appeared at the January 27, 2000 Hearing: Attorney Paul B. Millis, Kerry A. Hiller, and Attorney Michael B. Wacker.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION .
Article X—Bill of Rights
Section 1. Bill of R ights.
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(3) subject any person for the same offense to be twice put in jeopardy;
Rule 5. Not ice of Service of Process
(B) Summons. The Summons is the official notice to the party informing him/her *279 that he/she is identified as a party to an action or is being sued, that an Answer is due in twenty (20) calendar days (See, HCN R. Civ. P. 6) and that a Default. Judgement may be entered against them if they do not file an Answer in the limited time. It shall also include the name and location of the Court, the case number, and the names of the parties. The Summons shall be issued by the Clerk of Court and shall be served with a copy of the filed complaint attached.
Rule 17. Computation of Time
When counting days to meet time limits under these rules, the day identified as the stalling day is not counted in the time limit. For example, if a Complaint is filed on the first day of a month and the Answer is due in twenty (20) calendar days, then the date the Answer is due will be the twenty-first day of the month. If the time limit identified in these rules is less than seven (7) days, then Saturdays, Sundays, and legal holidays are not counted in the time limit. Legal Holidays are defined as those recognized by the Ho-Chunk Nation. If a time limit falls on a weekend or legal holiday, then the time limit falls on the next working day. Computation of time originates with the actual Court filing date or Court file stamped date of the document and not the date the notice or the document is received by the party.
Rule 19. Filing and Responding to Motions
(A) Motion. Motions may be filed by a party with any pleading or at any time after their first pleading has been filed. A copy of all written Motions shall be delivered or mailed-to other parties at least five (5) calendar days before the time specified for a hearing on the Motion. A Response to a written Motion must be filed at least one day before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other pai'ties within ten (10) calendar days of the date the Motion was filed. The party filing the Motion must file any Reply within three (3) calendar days.
Rule 20. Hearings on Motions
A hearing on a Motion may be held in the discretion of the Court. A party requesting a hearing must (a) schedule the hearing with the Court and (b) deliver or mail notice of the hearing to other parties at least five (5) calendar days prior to the hearing. If the trial is scheduled to begin within the time allowed for- a hearing, all responses shall be made by the time scheduled for commencement of the trial. Motions made within fourteen (14) calendar days of trial may be dismissed and costs and fees assessed against the moving party if the Court finds no good cause exists for failing to file the Motion more than fourteen (14) calendar days in advance of the trial.
Rule 45. Postponement
The Court may postpone a trial upon the request of a party, upon agreement of all parties, or at the Court’s discretion for good cause shown and on such terms as the Court deems just.
Rule 55. Summary Judgement
Any time after the date an Answer is due or filed, a party may file a Motion for Summary Judgement, on any or all of the issues presented in the action. The Court will render summary judgement in favor of the moving party if there is no genuine issue as to material fact and the moving party is entitled to judgement as a matter of law.
AMENDED AND RESTATED GAMING ORDINANCE OF THE HO-CHUNK NATION
Chapter 2—Definitions
For purpose (sic ) of this Ordinance:
Sec. 215. “License” means a privilege granted for a limited time to a person or *280 entity to perform certain acts; a License shall not convey any property or liberty interest to the licensee.
Chapter 8—Ho-Chunk Gaming Commission
Sec. 807. Potvers and duties of Commission. The Commission shall be responsible for enforcing this Ordinance and shall ensure compliance with this Ordinance, IGRA [Indian Gaming Regulatory Act] and the Compact, any licenses issued, and any Resolutions of the Legislature specifically enforceable by the Commission. In addition to other duties specifically delegated to the Commission in this Ordinance, the Commission shall have the following powers and duties:
(c) Except as otherwise provided, the Commission shall issue and deny gaming licenses in accordance with Chapter 12 of this Ordinance.
(d) The Commission or the Legislature shall refer any apparent violations of this Ordinance, IGRA, the Compact, or violations of License conditions to the Department of Justice for investigation as provided under Sec. 1803 of this Ordinance.
(i) The Commission or the Legislature may impose penalties for violations of this Ordinance, any Order of the Commission, or any License condition in accoi'danee with Chapter 18 of this Ordinance.
(i) The Commission shall have the authority and responsibility to interpret this Ordinance and its rules in proceedings before it.
Sec. 810. Commission Hearings.
(b) The Commission shall afford a Licensee the opportunity for a hearing prior to taking final action resulting in- the imposition of any penalties which the Commission is authorized to impose pursuant to this Ordinance or the Commission’s Rules of Practice and Procedure.
(e)Where a person or entity is charged with violation of this Ordinance, a decision of the Commission pursuant to this Ordinance, a License condition, the Compact, the IGRA or any other applicable laws, regulations or agreements concerning the regulation of gaming, including but not limited to any agreement relating to gaming with the Ho-Chunk Nation, the party alleging the violation shall carry an initial burden of establishing a prima facie case violation.
Sec. 820. Determination by the Commission.
-(b) All significant determinations made by the Commission shall be documented in a written resolution. Significant determinations include the grant, denial or cancellation of a License, a finding of a violation of the Ordinance, the Compact, the IGRA, the conditions of any license issued by the Commission, any decision rendered by the Commission pursuant to this Ordinance, or any other applicable laws, regulations or agreements regulating gaming, including, but not limited to, any agreement with the Ho-Chunk Nation, and the imposition of any sanctions or penalties.
Sec. 822. Appeals. Decisions of the Commission under this chapter may be appealed under Sec. 1101 of this Ordinance.
Chapter 11—Powers and Duties of the Ho-Chunk Nation Trial Court
Sec. 1101. Appeal of Commission Decision to the Tribal Court,
(a) Appellants. A party aggrieved by [a] decision of the Commission pursuant to an enforcement proceeding may appeal the decision as provided in this Section.
(b) Jurisdiction. The Tribal court shall have jurisdiction to review all such *281 decision, (sic ) except decisions denying a License under Sec. 1203(a)(iv) which shall be reviewable only by the Legislature.
(c) Procedures. Appeals to the tribal court shall be brought as provided by tribal law, except that the tribal court shall apply the same standard of review set out in subsec. (v) below.
(v) Decisions. Decisions of the Trial Court shall be based upon a review of the record of the Commission’s proceedings. Oral arguments, if any, and any written statements submitted (sic). The Trial Court shall not exercise de novo review of Commission decisions and shall give proper deference to the administrative expertise of the Commission and to determinations of credibility. The tribal court shall not set aside or modify any decision unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law.
(vi) Relief afforded to appellants. The Trial Court of the Ho-Chunk Nation is limited to the following relief for actions under this Ordinance:
(a) In the case of employee or vendor licensing determinations, the Trial Court is limited to remanding determinations to the Gaming Commissions (sic) for reconsideration consistent with its findings should it find that the Gaming Commission acted in an arbitrary and capricious manner or its decision was unsupported by substantial evidence or contrary to law.
Chapter 12—Licensing Procedures
Sec. 1203. Applicat ion for License.
(a) No license shall be issued under this Chapter except upon a sworn Application filed with the Commission, in such form as may be prescribed by the Commission. Containing a full and complete showing, at a minimum, of the following (sic ):
(i) Satisfactory proof that the Applicant is of good character' and reputation among the members of the Nation, and is financially responsible;
(iii) Agreement by the Applicant to accept an (sic) abide by all conditions of the License as provided in this Ordinance;
(b) No license shall be issued to any Applicant who has been determined by the Legislature or the Commission to be a person whose prior activities, criminal record, if any, or reputation, habits and associations pose a threat to the public interest or to the effective regulation and control of gaming, or create or enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the operation of gaming or the carrying on of the business and financial arrangements incidental thereto.
Sec. 1209. Condit ions of License. Any license issued under this chapter shall comply with such reasonable conditions as may be fixed by the Commission, including but not limited to the following conditions:
(b) Persons and entities licensed by the Commission shall comply with such conditions of the License as the Commission, in its reasonable discretion, may require, including but not limited to, compliance with such condition (sic) or remedial programs as the Nation’s Employee Assistance Program may prescribe.
Sec. 1212. Cancellation or Suspension. The license and his or her or its employees shall be legally responsible for any violation of the Ordinance or the License. Any License issued hereunder may be canceled by the Commission for the breach of any *282 of the provisions of the License, this Ordinance, or any rules promulgated pursuant to this Ordinance, as provided in Chapter 18 and as follows:
(c) Appeals. All decisions of the Commission regarding cancellations of Licenses shall be final, unless appealed as provided in Chapter 11 of this Ordinance ... No gaming shall be conducted the (sic) Licensee after cancellation, even during the tendency (sic ) of an appeal proceeding.
Chapter 14—Background Investigations
Sec. 1402. Standards for Background, Investigations. All background investigations shall be conducted under the supervision and direction of the Department of Justice to ensure that the Nation in its Gaming Operations shall not employ or contract with persons whose prior activities, or reputation, habits and associations pose a threat to the public interest or to the effective regulation of gaming conducted under this Ordinance, or create or enhance the danger's of unsuitable, unfair' or illegal practices and methods and activities in the conduct of such gaming.
Chapter 18—Enforcement and Penalties for' Violations
Sec. 1801. Enforcement. Any person who:
(a)Violates any provision of this Ordinance.
(e) Fails to observe the Commission’s Rules of Procedure and Practice, License conditions imposed by the Commission or Legislature, or' decisions of the Commission rendered pursuant to this Ordinance. Resolutions of the Legislature, or tribal court decisions shall be subject to tivil penalties as provided in Sec. 1802.
Sec. 1802. Penalties. The Commission shall be empowered to impose any of the following civil penalties:
(a) Termination, suspension or exclusion from employment in any Gaming Operations or other employee discipline;
Sec. 1803. Investigations.
(b) The Department of Justice may investigate without limitation the backgrounds and suitability of any Applicant or Licensee to ensure that the Applicant’s or Licensee’s prior activities or1 reputation, habits and associations do not pose a threat to the public interest or to the effective regulation of gaming, or create or enhance the danger of unsuitable, unfair or illegal practices and methods and activities in the conduct of gaming.
(c) The Department of Justice may also investigate without limitation any suspected violation of the Ordinance, the Compact, the IGRA, the conditions of any License issued by the Commission, and (sic) order by the Commission, Legislature, or tribal court or any other applicable laws, regulations or agreements, including, but not limited to any agreement with the Ho-Chunk Nation.
DECISION
Both parties requested that the Court determine the instant matter in accordance with HCN R. Civ. P. 55 since there exists no dispute of material fact. Specifically, the parties do not contest the fact that the plaintiff removed and concealed a patron’s property, a broken pair of Oakley sunglasses, from the main cashier booth of Ho-Chunk Casino on May 22, 1999. This action prompted the defendant to revoke the plaintiffs gaming license and impose a fine of $150.00 on August 24, 1999 after the plaintiff had completed a three (3) day administrative suspension for the same offense. The parties, however, diverge when arguing the proper application of law to the accepted factual scenario.
*283 The plaintiff does not contest the degree of severity of the punishment rendered by the defendant, but argues that the defendant was barred by the Constitution of the Ho-Chunk Nation [hereinafter HCN Constitution], Art. X, Sec. 1(a)(3) from imposing any form of punishment. The plaintiff, alternatively, argues that the defendant acted arbitrarily when it revoked the plaintiffs gaming license absent prior adoption of license conditions as directed by the Amended & Restated Gaming Ordinance [hereinafter Gaming Ordinance] § 1209(b). The defendant counters the former argument by reference to persuasive federal and state caselaw, advancing a contrary interpretation of the concept of double jeopardy. The defendant counters the latter argument by emphasizing that it properly revoked the plaintiffs license pursuant to authority granted in the Gaming Ordinance § 1203(a)(i) and (b) in conjunction with § 1802(a).[1] The Court shall address the legal issues presented by the parties below.
I. SHOULD THE COURT APPLY THE EVOLVING INTERPRETATION OF THE DOUBLE JEOPARDY CLAUSES OF THE UNITED STATES AND WISCONSIN CONSTITUTIONS TO THE DOUBLE JEOPARDY CLAUSE CONTAINED IN THE CONSTITUTION OF THE HO-CHUNK NATION?
The language of the three double jeopardy provisions differ slightly in substantive form:
nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb. U.S. Const, art. V.
no person for the same offense may be put twice in jeopardy of punishment Wis. Const, art. I, § 1.
The Ho-Chunk Nation, in exercising its powers of self-government, shall not subject any person for the same offense to be twice put in jeopardy. HCN Constitution, Art. X, Sec. 3.[2] The Wisconsin Supreme Court has determined that the state and federal double jeopardy guarantees prove “identical in scope and purpose,” Day v. St,ate, 76 Wis.2d 588, 591, 251 N.W.2d 811, cert, denied 434 U.S. 848, 98 S.Ct. 156, 54 L.Ed.2d 116 (1977), and, therefore, the United States Supreme Court’s interpretation of the clause binds state action. This Court has not previously addressed whether the tribal double jeopardy provision should share an identical interpretation with its federal and state counterparts. In fact, no case has ever directly implicated a review of the double jeopardy clause.
The defendant recounts the history of the federal double jeopardy clause with sufficient detail in its November 24, 1999 Memorandum in Support of Motion for Summary Judgment, and the Court declines to reiterate the same. See also Green v. United States, 355 U.S. 184, 198-202, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) (Frankfurter, J., dissenting). The Court does deem it worthy to discuss the expan *284 sive application of the clause within the civil context. More specifically, the Court will attempt to define the level of state action which constitutes punishment for purposes of triggering the protection afforded by the federal double jeopardy clause.
The term “jeopardy” denotes the risk traditionally associated with a criminal prosecution undertaken to vindicate public justice. Breed v. Jones, 421 U.S. 519, 528-29, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). Difficulty arises when the United States Congress fails to specifically delineate whether a statute employs criminal or civil sanctions. The United States Supreme Court has addressed this situation by announcing the following analytical approach. A court must assess:
Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only upon a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.
Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Courts must perform this analysis when viewing the statute on its face, and not in its application. The seven (7) factors may appear in varying degrees, ahd the absence of one will not prove disposi-tive. Id.
The Supreme Court later recognized that even when Congress designates a statutory penalty as civil in nature, the focus may shift to whether the disproportionately punitive effect or purpose of the penalty renders it a criminal punishment. United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Federal and state courts again were directed to perform this analysis while viewing the statute on its face. Id. This directive briefly changed with the decision in United States v. Halper, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).
In Halper, a unanimous Court found that civil remedies, as applied in rare circumstances, may possess the equivalent punitive and/or deterrent effect as certain forms of criminal punishment. Id. The civil sanction had to be extreme and wholly divorced from á reasonable damages award. Id. at 442, 109 S.Ct. 1892. Accordingly, courts needed to assess the character of the actual sanctions, rather than relying solely upon statutory interpretation. Id. at 447, 109 S.Ct. 1892. A civil sanction would transform into criminal punishment only if it advanced purely retributive or deterrent goals. Id. at 448. Therefore, the sanction could not rationally satisfy any remedial purpose since courts have long recognized that civil remedial sanctions can fulfill secondary punitive and/or deterrent purposes. Id, at 447, 109 S.Ct. 1892.
Prior to another change in double jeopardy jurisprudence, federal courts postulated on the logical expansion of the principle announced in Halper. The courts could not detect any practical difference regarding the order of penalties. A criminal prosecution should likewise be barred after' the imposition of an egregious civil sanction which had risen to the level of criminal punishment. See U.S. v. Furlett, 974 F.2d 839, 843 n. 2 (7th Cir.1992) and. U.S. v. Marcus Schloss & Co., Inc., 724 F.Supp. 1123, 1126 (S.D.N.Y.1989). Also, this Court cannot discount the conceivable, albeit implausible, occurrence wherein two successive civil prosecutions may serve to trigger double jeopardy protection.
Then, the Supreme Court overturned Halper merely eight years after the unani *285 mous decision. The Court claimed that it had improperly elevated one Kennedy factor to dispositive status, namely: “whether [the sanction] appears excessive in relation to the alternative purpose assigned.” Hudson v. United States, 522 U.S. 93, 101, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) citing Kennedy 372 U.S. at 169, 83 S.Ct. 554. And, in doing so, the Court incorrectly focused on the application of the statute in a particular instance rather than on its face. Hudson 522 U.S. at 101, 118 S.Ct. 488. The Court, therefore, retreated to its pre-Halper interpretation of the double jeopardy clause, directing courts to refrain from assessing the proportionality of sanctions as applied in a specific case.
Despite the uncertainty in double jeopardy jurisprudence, the federal and state courts have consistently addressed the issue of debarment and license revocation/suspension.[3] Debarment constitutes a type of “rough remedial justice” deemed decidedly civil in nature by the Supreme Court. Furlett 974 F.2d at 844 quoting Helper, 490 U.S. at 446, 109 S.Ct. 1892. Characteristically, debarment does not contain any punitive criminal element. Hudson 522 U.S. at 104, 118 S.Ct. 488. Debarment typically occurs when a license holder has evinced a willingness, and perhaps a propensity, to engage in conduct regarded as a risk to public safety and welfare. State v. Bowling, 712 So.2d 798, 800 (Fla.App. 2 Dist.1998). Therefore, license suspension/revocation serves to protect the public from potential inimical conduct of the wrongdoer. Id.; See also Silva, v. Dir. of the Div. of Marine Fisheries, 46 Mass.App.Ct. 608, 613, 708 N.E.2d 136 (1999) and Consumer and Industry Services v. Greenberg, 231 Mich.App. 466, 471, 586 N.W.2d 560 (1998).
In actuality, license suspension is “the ‘revocation of a privilege voluntarily granted,’ a traditional attribute of a remedial action.” Moser v. Richmond County Bd. Of Commrs., 263 Ga. 63, 64, 428 S.E.2d 71 (1993) quoting State v. Strong, 158 Vt. 56, 605 A.2d 510, 513 (1992). Conferring debarment authority in an administrative/regulatory agency is prima facie evidence of civil, not criminal, intent. Hudson 522 U.S. at 103, 118 S.Ct. 488. The fact that the conduct may support a criminal charge does not render the debarment a criminal punishment. Id. at 105, 118 S.Ct. 488. In fact, the consequences of a license suspension/revocation may sometimes prove more severe than some applicable criminal penalties. Silva, 46 Mass.App.Ct. at 613, 708 N.E.2d 136.
The Court finds the preceding interpretations of the federal double jeopardy clause persuasive, and thereby imports the above foundational concepts into the tribal context for the purpose of addressing the double jeopardy claim in the instant case. The Court, however, notes that it is not adopting the cited federal and state authority for use in future cases due to the potential existence of contrary statutory history. Neither party presented evidence or an informed argument regarding the possible differences between the tribal and state and federal double jeopardy provisions. Statutory history may elucidate such differences, and the Court accordingly reserves the right to readdress this issue in the future.
The plaintiff maintained a gaming license at Ho-Chunk Casino prior to its revocation by the defendant on August 24, 1999. The Gaming Ordinance defines the gaming license as a “privilege granted for a limited time,” conferring no “property or liberty interest” upon an individual by means of its issuance. Gaming Ordinance § 215; See also Rave, Sr. v. HC Gaming *286 Comm’n, CV 96-33 (HCN Tr. Ct., Apr. 23, 1997) p. 9 and Cholka v. HC Gaming Comm’n, CV 95-07 (HCN Tr. Ct., Feb. 5, 1996) p. 8. The Ho-Chunk Nation Legislature [hereinafter Legislature] delegated the authority to revoke gaming licenses to a regulatory agency, Gaming Commission. The Legislature explicitly designated the action of revocation as a civil penalty. Id. § 1802.
As noted above, federal and state double jeopardy analyses begin with statutory interpretation. In most instances, when a legislative body explicitly designates a penalty as civil in nature, the inquiry ends unless the disproportionately punitive effect or purpose of the penalty renders it a criminal punishment. See United States v. Ward, 448 U.S. 242, 248-49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980). Evolving federal caselaw g diverges at this point, but courts have uniformly determined that the revocation of a license constitutes a decidedly civil penalty. Therefore, the Court finds that the plaintiff cannot avail herself of the protection afforded by the tribal double jeopardy provision since revocation does not rise to the level of criminal punishment.
II. WHAT LEVEL OF DEFERENCE MUST THE COURT ACCORD A DETERMINATION RENDERED BY THE GAMING COMMISSION?
The Gaming Ordinance clearly defines the appellate role of the Court in relation to review of Gaming Commission determinations.
The Trial Court shall not exercise de novo review of [Gaming] Commission decisions and shall give proper deference to the administrative expertise of the [Gaming] Commission and to determinations of credibility. The tribal court shall not set aside or modify any decision unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law.
Gaming Ordinance § 1101(c)(v). The Court has recognized that the Gaming Ordinance confers broad powers upon the Gaming Commission. Littlegeorge v. HC Gaming Comm’n, CV 97-31 (HCN Tr. Ct., July 3, 1997) p. 5. Specifically, the Gaming-Commission retains the “authority and responsibility to interpret th[e] [Gaming] Ordinance.” Gaming Ordinance § 807(i). The Court, however, requires the Gaming Commission to* strictly employ the statutory language, Rave, Sr. v. HC Gaming Comm’n, CV 96-33 (HCN Tr. Ct, Apr. 23, 1997) p. 9, reversing any unreasonable interpretations. Rave, Sr. v. HC Gaming Comm’n, CV 96-33, 1997 WL 34665070, 1 Am. Tribal Law 210, 217 (HCN Tr. Ct, Oct. 9, 1997) p. 6.
 The Court adjudges reasonableness by ascertaining whether the Gaming Commission fully considered the relevant facts and advanced a well-articulated, logical application of the law to those facts. Id.. The Gaming Commission possesses a unique understanding of the Gaming Ordinance due to its level of familiarization with the legislation and its need to achieve internal consistency and cohesiveness within the document. Cholka v. HC Gaming Comm’n, CV 95-07 (HCN Tr. Ct, Feb. 5, 1996) p. 5. Therefore, the Court will not disrupt findings of the Gaming Commission- absent pretext or a haphazard or contradictory application of law.
III. SHOULD THE OFTENTIMES INCONSISTENT RATIONALE OFFERED BY THE GAMING COMMISSION IN SUPPORT OF THE LICENSE REVOCATION REQUIRE THE COURT TO REVERSE THE DETERMINATION?
At the August 24, 2000 Show Cause Hearing, the defendant based the revoca *287 tion of the plaintiffs gaming license solely on a suitability determination pursuant to Gaming Ordinance § 1203(b). See Show Cause Hearing Transcript, pp. 4, 5, 26 and 27. In the November 24, 1999 Motion for Summary Judgment, the defendant contended that it also acted pursuant to Gaming Ordinance § 1203(a)(i). Finally, the defendant claimed it initially “found that the plaintiff violated Section 1803(b) of the [Gaming] Ordinance.” Amended Answer, Dec. 23, 1999, p. 2.
The plaintiff maintains that the Court should focus elsewhere, arguing that the defendant could not revoke the plaintiffs gaming license absent prior adoption of license conditions as directed by Gaming Ordinance § 1209(b). The defendant countered this assertion by stating that “[s]uch conditions have typically been imposed upon licenses for retention of gaming licenses following Show Cause Hearings, etc.” Amended Answer, Dec. 23, 1999, p. 3. The defendant later contradicts this position by emphasizing that “[t]he ‘conditions of the license’ noted in this section referred to conditions imposed pri- or to licensure.” Defendant’s Amended Memorandum in Support of Motion for Summary Judgment, Jan. 6, 1999, p. 2 (original- emphasis). The defendant explained that it would impose conditions on those applicants with past transgressions, and not on licenses in general. Id., “The Nation, by and through the Gaming Commission, has always interpreted Section 1209(b) in this way.” Id,, p. 3.
The defendant bolsters the preceding argument by employing statutory interpretation. The defendant contends that “[t]he fact that Section 1209(b) is contained in a Chapter entitled ‘Licensing Procedures’ rather than ‘Conditions’ or ‘Rules of Licensure’ lends significant weight” to the argument that the subsection refers to matters related to the initial action of licensing. Id. The Court deems this a sensible interpretation given the logical progression of the section headings and content: “Gaming License Required” § 1201, “Standards for License” § 1202, “Application for License” § 1203, “Authority to Issue License” § 1205, etc. Furthermore, the relevant section states that “[a]ny license issued under this chapter shall comply with such reasonable conditions as may be fixed by the Commission.” Gaming Ordinance § 1209 (emphasis added). The language chosen by the Legislature clearly denotes a past action, and also evidences a discretionary grant of authority due to the usage of permissive, rather than mandatory, verb forms. The Court, therefore, deems it reasonable that the Gaming Commission chooses to invoke this section as needed to address particular instances.[4]
The difficulty arises in accepting the defendant’s position that it properly revoked the plaintiffs license by authority of a subsection likewise located in Chapter 12. The defendant’s own criticism defeats its argument. Gaming Ordinance § 1203(b) reads, in relevant part: “No license shall be issued to any Applicant who has been determined by the ... [Gaming] Commission to be a person whose prior activities ... pose a threat to the public interest or to the effective regulation and control of gaming.” (emphasis added). The language also references to the time of initial issuance, and therefore g cannot form the basis upon which to revoke a gaming license according to the reasonable interpretation advocated by the defendant.
The Court, however, declines to reverse the determination of the Gaming *288 Commission based upon a failure to invoke the proper authority in the Gaming Ordinance. And, while the Court does not favor the seemingly outcome determinative argumentation of the defendant’s counsel, it finds that the underlying justification for the license revocation is patently sound. As referenced above, the defendant attempted to claim that it originally revoked the plaintiffs license by authority of Gaming Ordinance § 1803(b). There exists no support for this proposition in the Shoiv Cause Hearing Transcript, but the Court deems that the improper citation to Gaming Ordinance § 1203(b) represents a technical error. The Court arrives at this holding due in large part to the nearly identical language contained in Gaming Ordinance § 1803(b), providing an ongoing ability “to ensure that the Applicant’s ... prior activities ... do not pose a threat to the public interest or to the effective regulation of gaming.” (emphasis added).
Ultimately, the Court must not reverse a determination of the Gaming Commission unless it finds that the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law. Gaming Ordinance § 1101(c)(v). The plaintiff attacked defendant’s application of Gaming Ordinance § 1203(b) as arbitrary and capricious since it appeared on its face to refer only to the time of licensure. Plaintiffs Brief in Opposition of Defendants’ Motion, for Summary Judgment, Jan. 17, 2000, p. 2. As previously noted, the Court agrees with this interpretation, but does not deem the action arbitrary or capricious. Moreover, the Court wishes to avoid a remand wherein the Gaming Commission would proceed to reconsider the case in accordance with Gaming Ordinance § 1803(b). The Gaming Ordinance limits the manner of relief which the Court may grant to the plaintiff. In licensing g determinations, the Court can only remand to the Gaming Commission for reconsideration consistent with the Court’s findings. Gaming Ordinance § 1101(c)(vii)(a). The obvious result of such a remand would be unnecessary loss of time and money since the reconsideration would proceed under nearly identical statutory language. The Court can conceive of no rational reason justifying this procedural formality.
The plaintiff does argue that the vagueness of the language contained in Gaming Ordinance § 1203(b), and by implication Gaming Ordinance § 1803(b), could lead to potential favoritism and discrimination. Plaintiffs Brief in Opposition of Defendants’ Motion for Summary Judgment, Jan. 17, 2000, p. 3. The plaintiff, however, conceded at the January 27, 2000 Motion Hearing that no evidence of favoritism or discrimination exists in the instant case. The Court again agrees with the argument of the plaintiff, and admonishes the Gaming Commission to establish instructive guidelines for dealing with matters arising under the noted subsections of the Gaming Ordinance. However, the Court does not deem that the facts of this case pose a close question whereby the existence of guidelines would prove necessary for a reasonable resolution. Rather, the Gaming Commission properly sought to protect against potential future risks to the public interest given the plaintiffs demonstrated willingness to engage in wrongful, even criminal, conduct. The Court agrees with the Gaming Commission’s determination that an individual who conceals a theft should not hold a gaming license within a casino. No reasonable tribunal would rule otherwise. THEREFORE, the Court grants summary judgment in favor of the defendant.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judge- *289 merit or Order. Otherwise, all parties have the right to appeal a final judgement or order of the Trial Court. If either party is dissatisfied with the decision of this Court, they may file a Notice of Appeal with the Ho-Chunk Supreme Court within thirty (30) calendar days from the date this Court renders such final judgment or order. The Notice of Appeal must show service was made upon the opposing party prior to its acceptance for filing by the Clerk of Court. The Notice of Appeal must explain the reason the party appealing believes the decision appealed from is in error. All appellate pleadings to the Ho-Chunk Supreme Court must conform with the requirements established by the Ho-Chunk Supreme Court as stated in the Ho-Chunk Nation.

. At the August 24, 2000 Show Cause Hearing, the defendant based the revocation of the plaintiff's gaming license on a suitability determination pursuant to the Gaming Ordinance § 1203(b). See Show Cause Hearing Transcript, pp. 4, 5, 26 and 27. Therefore, the Court shall not entertain defendant's argument on the basis of the Gaming Ordinance § 1203(a)(i).

. The double jeopardy provision of the Indian Civil Rights Act of 1968 appears identical in form apart from the general designation of "Indian tribe.” See 25 U.S.C. § 1302(3).

. Like its federal and state counterparts, the Court shall use the terms "debarment" and "license revocation/suspension'' interchangeably.

. The Court notes that application of Gaming Ordinance § 1203 to occasions unrelated to the initial issuance of a license proves inconsistent with this interpretation.